**BIG TOWN NURSING HOMES, INC.,**
**Plaintiff-Appellant,**

**v.**

**RESERVE INSURANCE COMPANY,**
**Defendant-Appellee.**

**No. 73-1682.**

United States Court of Appeals,
Fifth Circuit.

April 10, 1974.

Walter H. Mizell, Dallas, Tex., for plaintiff-appellant.

B. Thomas McElroy, Dallas, Tex., for defendant-appellee.

Before BROWN, Chief Judge, and GEWIN and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiff-appellant, Big Town Nursing Homes, Inc. ("Nursing Home"), brought this diversity action against its insurer, Reserve Insurance Company ("Reserve"), in order to recover a sum alleged to be due under the malpractice endorsement of a general liability policy. The district court held for defendant on the ground that the actions giving rise to plaintiff's loss did not fall within the definition of malpractice under the applicable Texas law. We reverse.

In September of 1968 Mr. Howard Newman voluntarily entered Nursing Home in order to receive treatment for alcoholism. On six occasions during the following two months Mr. Newman attempted to quit the premises. Five times he was observed and restrained; on the sixth try he managed a successful escape. Understandably annoyed at Nursing Home's overeager ministrations, Mr. Newman filed suit seeking recovery for false imprisonment. After receiving notice of the suit, Nursing Home tendered the defense to Reserve on the basis of a malpractice rider to its insurance policy. Reserve denied liability under the policy, and plaintiff was forced to proceed with the defense at its own expense. This effort met with less than resounding success, and Nursing Home suffered a $13,000 adverse judgment. Plaintiff claims that this judgment, necessary attorneys fees, and the incidental expenses of litigation, a total of more than $17,000, are properly owed by Reserve under the contract of insurance.

The professional liability endorsement at issue here provides in relevant part:

"It is agreed that such insurance as is afforded by the policy under the liability coverages also applies to dam-

ages because of injury, including death, sustained by any person and arising out of malpractice as defined herein committed during the policy period . . . .

"1. 'Malpractice' means malpractice, error or mistake (a) in rendering or failing to render to such person, or to the person inflicting the injury, medical, surgical, dental or nursing care, including the furnishing of food or beverages in connection therewith . . . ."

Appellant contends that its treatment of Mr. Newman clearly amounts to error or mistake in the rendering of nursing care, and is therefore covered by the policy. We find this argument persuasive.

Nursing Home is licensed under the laws of Texas to furnish "food and shelter to . . . persons . . . and . . . [to provide] minor treatment under the direction and supervision of a physician . . . or services which meet some need beyond the basic provision of food, shelter and laundry." [1] Mr. Newman originally sought to avail himself of all of these services during the course of a hoped-for convalescence and rehabilitation. But when he attempted to end his stay, he was restrained. The district court held that under Texas law liability for this action would not be covered by a professional liability endorsement because the restraint resulted from an administrative decision on the part of appellant's management and from mechanical action on the part of its employees, and therefore lacked the necessary exercise of a *professional* judgment. *See* Maryland Casualty Co. v. Crazy Water Co., 160 S. W.2d 102 (Tex.Civ.App. Eastland, 1942, n. w. h.). This conclusion, however, is directly contradicted by findings of fact appearing in the opinion below.

The district court noted that while "[t]here is some confusion as to who ordered the nurses and other personnel to restrain Mr. Newman . . . there is a general policy among the treating doctors that when a patient is irrational or is apt to hurt himself the nurses are to restrain the patient until the doctor performs an examination and orders otherwise." The court specifically found that on at least one occasion "the nurses placed Mr. Newman in a geriatrics chair to restrain him until he became more rational." What emerges from these findings is not the picture of a purely physical action in response to a business determination, but rather the exercise of a trained nursing judgment in obedience to an established medical policy. Indeed, in light of the condition that prompted Mr. Newman to enter Nursing Home, it is very likely that he originally expected and desired a degree of supervision and control that he was unable to provide for himself. The litigation in state court has established that appellant's employees incorrectly evaluated the patient's anger and anxiety as dangerous irrationality. A malpractice endorsement is designed to protect the insured from the financial burdens arising from precisely such misinterpretations of a patient's condition.

Appellee raises three additional defenses of the judgment below: 1) that coverage is barred by the "criminal act" exclusion in the policy; 2) that the policy limits recovery to damages for "bodily injury", and does not therefore encompass the exemplary damages or compensation for mental suffering awarded in the state court; and 3) that Nursing Home breached the notice requirement of the policy by filing a false report. The district court did not rely on these propositions in denying recovery, and we find them to be without merit.

Appellee's interpretation of the *criminal act exclusion* [2] common to malpractice liability insurance as em-

1. Vernon's Tex.Rev.Civ.Stat.Ann. art. 4442c (1972).

2. The endorsement provides that:
"(5) No liability shall attach to the company hereunder in respect of: (a) criminal acts or services rendered while under the influence of toxicants or drugs . . . ."

**526**

bracing all manner of technical assaults, batteries, and imprisonments would largely destroy the efficacy of such policies. We decline to take this radical step in the application of state law in the absence of any substantial showing that Texas state courts would so hold. The Texas cases cited by appellee in support of its position are inapposite, for they deal either with "intentional act" exclusions or with criminal conduct on the order of murder. Appellee's argument that recovery under the policy is limited to damages for *bodily* injury must fall to the language of the endorsement itself, which defines coverage as extending broadly to "damages because of injury." In regard to appellee's third contention, we note that there has been no finding at any point in this proceeding that appellant's agent *knowingly* falsified information in his insurance report, an admitted prerequisite under Texas law to loss of coverage on the ground of inadequate notice. Fidelity & Casualty Company of New York v. Griffin, 178 F.Supp. 678 (S.D.Tex.1959). In addition, we note that this basis for denying coverage appears particularly inappropriate here. Reserve rejected all liability and refused to defend following appellant's admittedly accurate statement that the claim arose from an allegation of false imprisonment. Throughout this litigation appellee has maintained that this information alone was sufficient for its purposes. Certainly no more detailed or accurate statement of Mr. Newman's experiences would have affected Reserve's course of action, for it had determined from the opening line to refuse all responsibility under the policy.

■ Since appellee has not only denied liability under the policy, but has also breached its distinct contractual duty to defend, we must remand for assessment of the attorneys' fees incurred by Nursing Home in the unsuccessful state court litigation and those expenses of the state court suit which Reserve had obligated itself to pay in the contract of insurance.

Reversed and remanded.