909 F.2d 133
 GUARANTY NATIONAL INSURANCE CO., and Ranger Insurance Co.,
Plaintiffs-Appellees-Appellants,
v.
The NORTH RIVER INSURANCE COMPANY, Defendant-Appellant,
United States Fire Insurance Co., Defendant-Appellee.
 No. 89-1890.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 17, 1990.
Rehearing Denied Sept. 17, 1990.
 
 Herbert Boyland, Harbour, Kenley, Boyland Smith & Harris, Longview, Tex., for defendant-appellant.
 Sidney H. Davis, Jr., Touchstone, Bernays, Johnston, Beall & Smith, Dallas, Tex., for plaintiffs-appellees-appellants.
 Appeals from the United States District Court for the Northern District of Texas.
 Before GOLDBERG, GEE and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 This case arises out of a psychiatric patient's suicide at Texarkana, Texas, Memorial Hospital. The hospital's liability is established. The district court resolved a dispute between the hospital's primary insurers and the hospital's excess liability insurers by holding that an exclusion in the hospital's primary comprehensive general liability policy did not apply to preclude coverage under that policy and that the single claim limit of liability in the hospital's primary professional malpractice policy applied. We affirm.
 
 I.
 
 2
 On September 13, 1983, Margaret Wagner was admitted to Texarkana Memorial Hospital for psychiatric care with directions that she be placed in the hospital's "closed" unit.[1] The closed unit, however, was full. Hospital staff decided, therefore, to place Wagner in the less secure, "open" unit. On September 14, 1983, Wagner jumped to her death from the window of her fourth floor hospital room.
 
 
 3
 The administrator of Wagner's estate sued the hospital on behalf of Wagner's survivors. A jury found the hospital negligent in three respects:
 
 
 4
 (1) failure to monitor and to observe Wagner properly;
 
 
 5
 (2) failure to maintain the windows in Wagner's room in a proper manner to prevent escape or suicide; and
 
 
 6
 (3) failure to maintain an adequate staff of properly trained personnel in the psychiatric unit.[2]
 
 
 7
 Each of these negligent acts was found to be a proximate cause of Wagner's death. The jury awarded Wagner's survivors $968,985.82 in damages. This judgment is final.
 
 
 8
 When Wagner died, the hospital was insured under four policies. First, a primary comprehensive general liability insurance policy issued by North River Insurance Company provided up to $500,000 coverage for each occurrence resulting in bodily injury liability. The North River policy contained an exclusion for liability arising from medical malpractice and professional services. The second policy, issued by United States Fire Insurance Company, provided primary hospital professional liability coverage. Coverage under this policy was limited to $200,000 for "each claim" and $600,000 "aggregate." The third policy, issued by Guaranty National Insurance Company, provided the first layer of excess liability coverage. This policy provided up to $500,000 of coverage per occurrence above the general liability coverage. It also provided coverage of $500,000 for "each claim" or $1,000,000 "aggregate" above the hospital's professional liability insurance. Finally, Ranger Insurance Company issued a policy that established a second layer of excess liability insurance. This second layer provided coverage of up to $25,000,000 in excess of all underlying insurance.
 
 
 9
 In partial satisfaction of the judgment, U.S. Fire paid $200,000 plus interest. U.S. Fire claimed $200,000 was the limit of its liability under the primary professional liability policy. North River paid nothing, claiming that the professional services exclusion in the comprehensive general liability policy excluded any coverage for Wagner's death. Guaranty and Ranger paid the remainder of the judgment.
 
 
 10
 Guaranty and Ranger filed the present lawsuit against North River. Guaranty and Ranger claimed that under the terms of the North River policy, North River was liable for a portion of the original judgment. Guaranty and Ranger also named U.S. Fire as a defendant, claiming that U.S. Fire's liability under the professional liability policy was $600,000 under the "aggregate" provision and not $200,000 under the "each claim" provision. Each party filed a motion for summary judgment. The district court granted Guaranty's and Ranger's motions for summary judgment against North River, holding that under the comprehensive general liability policy North River was liable under the original judgment. The district court also granted U.S. Fire's motion for summary judgment, holding that U.S. Fire was liable for only the $200,000 "each claim" limit. The district court denied the other motions. North River appeals. Guaranty and Ranger also appeal, challenging the district court's conclusion on the limit of U.S. Fire's liability.
 
 II.
 
 11
 Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The parties stipulated to all the facts necessary to rendering a summary judgment. The stipulation included copies of the insurance policies, the transcript from the trial of the suit against the hospital, and the jury verdict against the hospital. No genuine issues of material fact were raised. Instead, only two issues were before the district court. They were whether the North River exclusion precluded coverage and whether the U.S. Fire policy's single claim limit or aggregate limit applied. Interpretation of an insurance policy is a question of law. Gladney v. Paul Revere Life Ins. Co., 895 F.2d 238, 241 (5th Cir.1990). Because there were no genuine issues of material fact and because the only disputed issues called for determination of questions of law, the district court properly decided this case on the summary judgment motions.
 
 III.
 
 12
 The North River policy provides, in pertinent part, that North River will "pay on behalf of [the hospital] all sums which [the hospital] shall become legally obligated to pay as damages because of ... bodily injury ... to which this insurance applies...." The policy also contains a malpractice and professional services exclusion that excludes coverage for bodily injury that occurs "due to ... the rendering of or failure to render ... any service or treatment conducive to health or of a professional nature...." North River claims this exclusion exempts North River from any responsibility for the judgment against the hospital. Guaranty and Ranger, however, assert that North River cannot avoid liability under this exclusion, because the hospital's liability was founded, in part, on the hospital's failure to safeguard Wagner's window and the hospital's failure adequately to staff the psychiatric ward. Guaranty and Ranger claim that these errors did not involve professional services excluded under the professional services provision.[3]
 
 
 13
 We interpret the North River exclusion to avoid coverage only for actions taken on behalf of a patient that are based on professional, medical judgment. The hospital's liability in this case, however, was founded, in part, on its negligent failure to maintain Wagner's window in such a manner as to prevent her from committing suicide through the window. The hospital's error was not that it decided as a matter of professional judgment not to protect the open unit patients from the perils posed by the windows. Instead, the error was that once the hospital decided to provide such protection, it did not do so adequately. Testimony at the original trial revealed that a psychiatric patient previously had escaped from the open unit through an opened window. The hospital then placed screws in the window sashes to prevent the windows from being opened more than a few inches. This protection, however, proved to be inadequate to prevent Wagner's death.[4] The decision to protect the open unit patients through screws in the window sashes rather than through fixed, protective screens over the windows was an administrative, business decision and was not a professional, medical decision. We conclude, therefore, that the professional services exclusion in the North River policy does not reach the error for which the hospital was found to be liable.
 
 
 14
 The cases that come closest to the facts of this case support our interpretation of the North River exclusion. At least two cases specifically address hospitals' failures to safeguard their patients' safety. For example, in Duke University v. St. Paul Fire & Marine Ins. Co., 96 N.C.App. 635, 386 S.E.2d 762 (1990), review denied, 326 N.C. 595, 393 S.E.2d 876 (1990), a hospital patient was injured when she attempted to get out of a specially designed dialysis chair that was equipped with casters. The accident occurred because the hospital's employees negligently failed to lock the casters so that the chair would not move. The hospital was insured under a general liability policy that excluded coverage for liability "arising out of the providing or failure to provide professional services...." The court held that the exclusion precluded coverage only for "those services for which professional training is a prerequisite to performance." Since no professional training was required as a prerequisite properly to operate the dialysis chair, the exclusion did not prevent coverage for the patient's injuries.
 
 
 15
 Our conclusion also is supported by D'Antoni v. Sara Mayo Hospital, 144 So.2d 643 (La.Ct.App.1962). In D'Antoni, an elderly patient fell out of her bed because of the hospital's employees' negligent failure to raise the side rail on her bed. The hospital's comprehensive general liability insurer claimed this failure was an act of malpractice that was excluded under the policy's professional services exclusion. The court, however, held that the failure to raise the protective side rail was not a professional service because:
 
 
 16
 [t]he raising of the side rail was purely a mechanical act which any unskilled person could perform. It certainly requires no professional training or knowledge. The side rails were not a part of the patient's treatment per se since she could have recovered without them. They were simply a safeguard to provide her with a safe place to stay and were not a "service or treatment conducive to health" anymore than a safe floor to walk on would be. Neither was the maintaining of the rails a nursing service since the placing of the rails could be performed by anyone without the slightest nurses' training. While the initial decision to attach the side rails to the bed may have involved professional judgment, once the attending physician issued the order the professional aspect of it was complete. The placing and maintaining the rails in position was purely mechanical.
 
 
 17
 Id. at 646-47 (citations omitted).
 
 
 18
 We recognize that some courts have construed professional services exclusions broadly in holding that the exclusions precluded coverage. For example, in Antles v. Aetna Casualty and Sur. Co., 221 Cal.App.2d 438, 34 Cal.Rptr. 508 (1963), the court held that a professional services exclusion precluded coverage under a chiropractor's general liability policy. The chiropractor's liability stemmed from an accident in which a negligently-mounted heat lamp fell on a patient. The court held that the failure of the heat lamp occurred during professional services and therefore was within the terms of the exclusion. We are convinced, however, that the better authority supports our interpretation of the North River exclusion.
 
 
 19
 The distinction between professional services and non-professional services has been defined by this Court, in a case which clearly does not control but does support, by contrast, our holding in the instant case. In Big Town Nursing Homes, Inc. v. Reserve Ins. Co., 492 F.2d 523 (5th Cir.1974), a man who voluntarily entered a hospital for an alcoholism treatment program physically was restrained from quitting the program. The patient was restrained pursuant to a hospital policy that directed the nurses physically to restrain patients the nurses evaluated as irrational. The patient sued the hospital for false imprisonment. The hospital called upon its insurance company, claiming coverage under a malpractice rider that created coverage for liability arising from "error or mistake ... in rendering or failing to render ... medical, surgical, dental, or nursing care...." The Court, called upon to determine whether the claim was covered, held that the hospital's errors occurred in the course of "rendering ... medical ... or nursing care...." The Court explained that the nurses' restraint of the patient was not "a purely physical action in response to a business determination, but rather [was] the exercise of a trained nursing judgment in obedience to an established medical policy." Id. at 525.
 
 
 20
 In the present case, the hospital's failure to maintain Wagner's window was not an "exercise of a trained ... judgment in obedience to an established medical policy." To the contrary, the hospital's decision to safeguard Wagner's window through screws in the window sashes rather than through fixed, protective screens was an administrative decision. Consequently, the malpractice and professional services exclusion in the North River policy does not avoid coverage for liability that occurred due to the hospital's failure to maintain Wagner's window in a manner to prevent her escape.
 
 
 21
 Our conclusion that the North River policy provides coverage at least for the failure to maintain security as to the windows raises a second issue: can North River be liable for a judgment that is founded in part on a covered action and in part on an excluded action (the hospital's failure to observe properly)? The answer clearly is yes. In Texas, an insurer is not liable only when a covered peril and an excluded peril concurrently cause a loss. Cagle v. Commercial Standard Ins. Co., 427 S.W.2d 939, 944 (Tex.Civ.App.--Austin 1968, no writ). Where a loss, however, is caused by a covered peril and an excluded peril that are independent causes of the loss, the insurer is liable. Id. The failure to maintain the window and the failure to observe properly were independent causes, because the jury found that each of the hospital's acts of negligence separately was a proximate cause of Wagner's death. We conclude, therefore, that North River is liable under its policy, notwithstanding that the loss was caused, in part, by an excluded loss.
 
 IV.
 
 22
 The other policy at issue in this case is the professional liability policy issued by U.S. Fire. Guaranty and Ranger claim that the policy's $600,000 aggregate liability limit and not the $200,000 "each claim" limit should apply. Guaranty and Ranger argue that "each claim" means either "each claimant" or "each ground of liability." Since the members of Wagner's family were multiple claimants and there also was a finding of multiple acts of negligence in this case, they assert that the aggregate limit applies. The district court rejected Guaranty's and Ranger's argument, holding that the factor that "controls the limits of liability under a medical malpractice insurance policy is the number of injuries or deaths resulting from the malpractice."
 
 
 23
 Guaranty and Ranger first argue that each of the plaintiffs' claims in the underlying suit constitutes a "claim" for purposes of the policy, thereby invoking the aggregate limit. At least two lines of authority have developed on this issue. Guaranty and Ranger cite cases from jurisdictions that have held that when a suit based on a single injury or death is filed by multiple plaintiffs, each plaintiff's claim constitutes a claim for policy limit purposes. See e.g., Chicago Ins. Co. v. Pacific Indem. Co., 502 F.Supp. 725 (D.Md.1980); and Pinheiro v. Medical Malpractice Joint Underwriting Assoc., 406 Mass. 288, 547 N.E.2d 49 (1989). Guaranty and Ranger construct an ingenious argument that this line of authority should control the present case. Texas authority, however, rebuts Guaranty's and Ranger's argument. The Texas cases clearly have held that claims by multiple plaintiffs are subject to the single claim limit when each of the plaintiffs' claims arise out of the same single injury or death. See, e.g., McGovern v. Williams, 741 S.W.2d 373 (Tex.1987); Madisonville I.S.D. v. Kyle, 658 S.W.2d 149 (Tex.1983); and City of Austin v. Cooksey, 570 S.W.2d 386 (Tex.1978). Based on these Texas cases, we are bound to hold that the single claim limit of the U.S. Fire policy applies in the present case, notwithstanding the presence of multiple plaintiffs in the underlying litigation.
 
 
 24
 Guaranty and Ranger next claim that the aggregate limit applies because there are multiple grounds of liability. In support of this claim, Guaranty and Ranger cite St. Paul Fire & Marine Ins. Co. v. Hawaiian Ins. & Guaranty Co., 2 Haw.App. 595, 637 P.2d 1146 (1981). St. Paul, however, is an isolated holding based on the particular facts of that case. The reasoning in St. Paul has not been widely adopted. Guaranty and Ranger concede that St. Paul has not been adopted by the Texas courts. We, therefore, reject Guaranty's and Ranger's novel theory on this point.
 
 
 25
 We agree with the district court that an insurance policy's aggregate limits are not invoked when there is only a single injury or death. Consequently, we hold that U.S. Fire's liability under its policy was limited to the "each claim" limit of $200,000.
 
 V.
 
 26
 We affirm the district court's conclusion that the professional services exclusion in the North River policy does not preclude coverage for the hospital's failure to maintain its windows in a manner sufficient to prevent Wagner from escaping through the window. We also affirm the district court's conclusion that the "each claim" limit in the U.S. Fire policy applies to the judgment arising from Wagner's death.
 
 
 27
 AFFIRMED.
 
 GEE, Circuit Judge, dissenting in part:
 
 28
 The majority holds that the medical malpractice exclusion clause in North River's liability insurance policy does not apply to the hospital's failure to maintain the windows near a mentally ill patient in such a manner as to prevent her suicide because the decision about how to maintain them is a "purely administrative" one. My abiding conviction is that only a medical professional is equipped to assess the degree and character of restraint needful for the safety of a given psychotic patient and that, therefore, such a decision involves a professional judgment--the recognition and weighing of medical, not administrative, risks. I therefore respectfully dissent.
 
 
 29
 The stipulated facts of the case tell us that the hospital decided to secure the windows with screws rather than to provide the additional protection that screens or other measures could have offered. That decision proved to be wrong, not because a screwed-shut window presents a risk in the way that a slippery wet floor or an inadequately lighted stairwell present a risk, but because a medical professional should have recognized that a closed window would be an insufficient deterrent to a seriously mentally ill patient bent on suicide. Only a medical professional, not an administrator or a maintenance person, could recognize the particular risk to this patient presented by unscreened windows. To require an "administrator" to do so would be to hold him, not to a standard of ordinary care, but to the level of care of one possessing medical knowledge of the risks associated with the treatment of such a person as Ms. Wagner.
 
 
 30
 Our opinion in Big Town Nursing Homes, Inc. v. Reserve Ins. Co., Inc., 492 F.2d 523 (5th Cir.1974), adds credence to this view. There we held that an insurance policy which provided malpractice coverage included liability for the unlawful restraint of a patient because the restraint was the exercise of "a trained nursing judgment in obedience to an established medical policy" and not "a purely physical action in response to a business determination." Likewise, the record before us shows no business motivation for screwing the windows shut, but only a medical one stemming from the treatment of a mentally ill patient.
 
 
 31
 The cases cited by the majority involve the negligence of nonmedical personnel in failing to follow established hospital policy--such things as a failure to engage the brakes on a dialysis chair and the failure to raise a patient's bedrail. In today's case, it was not the negligence of nonmedical personnel that caused the harm--as it might have been had the window been improperly screwed shut and then opened by the patient--it was the inadequacy of the medical judgment itself.
 
 
 32
 I agree with the majority as to the interpretation of the "each claim" limitation written in the U.S. Fire policy, but because I am convinced that the hospital's negligence was of a professional nature and thus excluded by the North River policy, I would reverse the trial court judgment and therefore, I respectfully dissent.
 
 
 
 [1]
 Access to the closed unit is restricted. Also, this unit has window screens that prevent patients from escaping through the windows
 
 
 [2]
 The jury was not asked to decide whether the hospital was negligent in placing Wagner in the open unit
 
 
 [3]
 Guaranty and National concede that the exclusion precludes general as opposed to professional liability based on the jury's determination that the hospital failed to monitor and to observe Wagner properly
 
 
 [4]
 Wagner apparently jumped through the window without first opening it