United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-20542

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA,

Plaintiff-Counter Defendant-Appellee,

versus

U.S. LIQUIDS, INC.; MICHAEL P. LAWLOR; W. GREGORY ORR; EARL J. BLACKWELL; GARY J. VAN ROOYAN; WILLIAM A. ROTHROCK, IV; ALFRED TYLER, II; JAMES E. McENEANEY, JR.; JOHN N. HATSOPOLOS; ROGER A RAMSEY,

Defendants-Counter Claimants-Appellants.

Appeal from the United States District Court
For the Southern District of Texas

(H-01-CV-1980)

Before JOLLY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Defendants-Counter Claimants-Appellants U.S. Liquids, Inc., et al. (collectively, "USL") seek reversal of the district court's grant of summary judgment that declared Plaintiff-Counter Defendant-Appellee National Union Fire Insurance Co. ("National Union") had no obligation both (1) to indemnify USL under a

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Directors, Officers, and Corporate Liability insurance policy (the "Policy") for securities and shareholder derivative claims and (2) to advance USL defense costs for such claims under the Policy. Because we find the pollution exclusion is unambiguous and clearly barred both coverage of and defense costs for the claims, we AFFIRM the decision of the district court.

## BACKGROUND

This appeal concerns a dispute over insurance coverage under the Policy entered into by the insurer National Union and the insured USL. USL is a provider of integrated liquid waste management services, including collection, processing, recovery, and disposal. In February 1999 USL negotiated and purchased the Policy from National Union. The Policy included a "Securities Plus II" endorsement to cover securities claims, including those "based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of [USL]" and class or derivative claims "alleging any Wrongful Act of an Insured." The Policy also included several exclusions, including the pollution exclusion at issue, which denied coverage for any loss in connection with a claim:

(l)   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

    (1)   the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

    (2)   any direction or request to test for,

2

> monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

> including but not limited to a Claim alleging damage to the Company or its securities holders.

> Pollutants include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed.

The pollution exclusion applied to any "Loss in connection with a Claim." The Policy clearly stated that "[t]he term 'Claim' shall include a Securities Claim." The Policy also provided for the advancement of defense costs, according to the terms of the Policy, prior to the final disposition of any claim. But the Policy specifically provided that "the Insurer does not . . . assume any duty to defend."

The two underlying, pending federal lawsuits filed against USL include a consolidated securities class action brought by the shareholders of USL and a shareholder derivative suit filed on behalf of USL against certain directors and officers of USL. The plaintiff class in the securities action consists of shareholders who allege that they either purchased USL common stock between May 1998 and August 1999 or acquired USL common stock in a March 1999 secondary public offering at artificially inflated prices and in reliance on materially false and misleading statements presented in press releases issued by USL and documents USL filed with the SEC

3

between May 1998 and August 1999. The derivative suit accuses USL's directors and officers of intentional and negligent breach of their fiduciary duties in causing USL to violate federal environmental and securities laws, to falsify compliance with state and federal law, and to inflate earnings by knowingly engaging in illegal toxic waste disposal.

As part of an expansion plan announced in 1997, USL acquired numerous smaller waste management businesses between November 1996 and October 1999. The shareholders contend that USL's rapid growth campaign took place without regard to or disclosure of these companies' improper waste disposal practices. Both complaints filed by the shareholders present a similar factual account of USL's illegal activities. Allegations regarding USL's polluting activities initially stemmed from an FBI investigation into one specific company USL acquired – City Environmental, Inc. ("City Environmental"). This investigation was based on information about City Environmental's USL-owned Detroit, Michigan, plant. A confidential source alleged that USL was knowingly discharging liquid hazardous waste into Detroit's sewer system and illegally transporting and disposing of hazardous waste. After five witnesses cooperated with the government and agents searched the Detroit plant, EPA authorities shut down part of the plant.

These events signaled the start of a cleanup process at the Detroit plant, a criminal investigation of USL, and a revelation of illegal practices that USL had actively concealed from investors

4

and the public.  In August 1999 trading of USL's stock was suspended for six days.  Analysts downgraded USL's stock rating, and the stock value dramatically fell $10.75 per share.  In a January 31, 2000, press release, USL announced its 1999 earnings would be substantially reduced due to the closing and cleanup costs at the Detroit plant.[1]

After the underlying suits were filed, USL made demand on National Union to defend, contending the claims raised in the suits were covered by the Policy.  National Union denied that the claims were covered, citing the Policy's pollution exclusion, and filed suit based on diversity jurisdiction in district court, seeking a declaratory judgment that it is not obligated to defend or indemnify USL in the two underlying federal suits filed against USL and its directors and officers – the consolidated securities class action and the shareholder derivative action.  USL counterclaimed for declaratory judgment and breach of contract.  The district court granted summary judgment in favor of National Union, and USL now appeals.

### DISCUSSION

We review a district court's summary judgment rulings *de novo*, and apply the same standard as the district court.  ***Travelers Cas.***

---

[1] The consolidated securities complaint also alleged that USL and its directors and officers knew about and did not disclose that similar illegal practices regarding dumping of solid and liquid wastes were knowingly taking place at several other USL-owned facilities.

5

*& Sur. Co. of Am. v. Baptist Health Sys.*, 313 F.3d 295, 297 (5th Cir. 2002) (citing *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 550 (5th Cir. 2000)). Under Fed. R. Civ. P. 56(c), district courts properly grant summary judgment if, viewing the facts in the light most favorable to the nonmovant, the movant shows there is no genuine issue of material fact such that the movant is entitled to judgment as a matter of law. *Id.; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The district court's interpretation of an insurance contract is a question of law also subject to *de novo* review. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996) (citations omitted).

Both parties agree that the Policy should be interpreted under Texas law. In Texas, courts employ general rules of contract construction to insurance policies. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex. 1998). The terms of an insurance policy are unambiguous as a matter of law if they can be given definite or certain legal meaning. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). If the court finds no ambiguity, the court's duty is to enforce the policy according to its plain meaning. *Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984) (citation omitted). "The fact that the parties disagree as to coverage does not create an ambiguity, nor

6

may extrinsic evidence be admitted for the purpose of creating an ambiguity." *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1261 (5th Cir. 1997) (applying Texas law); *see also* *CBI Indus.*, 907 S.W.2d at 520. Courts may determine the lack of a duty to indemnify under a policy where an exclusion clearly applies to all claims in a pending, underlying suit. *See* *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (applying Texas law). "A claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Scottsdale Ins. Co. v. Texas Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999) (applying Texas law) (citation omitted).

The Texas Supreme Court has found that "[i]f, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous." *CBI Indus.*, 907 S.W.2d at 520. Courts can only consider the parties' interpretation of a contract if the court first determines a contract to be ambiguous. *Id.* (citing *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981)). There are two types of ambiguities: patent ambiguities are evident from the face of the contract and latent ambiguities arise when the terms of the contract are applied to the subject with which the contract deals. *CBI Indus.*, 907 F.2d at 520. If the court finds an ambiguity in the contract provisions, particularly in an exclusion clause, the court should construe the policy strictly against the insurer.

7

*Bailey*, 133 F.3d at 369; *Balandran*, 972 S.W.2d at 741 (noting that, where an ambiguity is found, courts should adopt the insured's interpretation as long as it is reasonable, even where the insurer's interpretation is a more reasonable interpretation).

Here, the district court adopted the magistrate's recommendation, which interpreted the terms of the parties' insurance policy under Texas law and concluded National Union had shown that the unambiguous pollution exclusion of the Policy barred coverage for the underlying suits against USL and its directors and officers.

## Whether the district court erred in finding National Union had no duty to indemnify USL under the Policy.

On appeal, USL argues that the Policy provides coverage for the underlying securities and derivative claims, notwithstanding the pollution exclusion. USL contends that the explicit grant of coverage in the Securities Plus II endorsement for securities claims would be rendered meaningless by reading the pollution exclusion to apply.[2] USL also stresses that even if the Policy does not provide outright for coverage of the underlying suits,

---

[2] The district court discounted this argument because even though USL is in the business of waste disposal, the pollution exclusion does not eliminate coverage for any securities claim that does not stem from the discharge of pollution, *e.g.*, self-dealing, embezzlement, or *ultra vires* acts. We agree and note that the Securities Plus II also functioned to permit both USL and National Union to elect arbitration **or** judicial proceedings to settle disputes in connection with the Policy, as opposed to the main policy, which required both parties to submit to AAA-binding arbitration.

8

there is an ambiguity about whether the Policy provides such coverage that should be construed in favor of the insured USL's reasonable interpretation of the Policy's coverage.

USL next maintains that because many of the claims in the securities and derivative suits are unrelated to pollution and require proof of unrelated facts, National Union is obligated to defend and indemnify. USL is correct that Texas recognizes a rule where if a loss "is caused by a covered peril and an excluded peril that are independent causes of the loss, the insurer is liable." *Guar. Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990) (applying Texas law). USL thus contends that the physical causes of the losses in the underlying suits – alleged omissions and misrepresentations, and inadequate due diligence – are independent and unrelated to pollution, and therefore are distinct covered events.

USL also claims that the district court inaccurately stated Texas law when it accepted the magistrate's conclusion that, based on *Scottsdale*, 173 F.3d at 943, the "arising out of" language in pollution exclusion required a broad, general, and comprehensive interpretation of the exclusion. USL contends that such exclusions should be read narrowly so as to favor coverage and that the Texas Supreme Court in *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185, 190-91 (Tex. 2002), has rejected the "but for" test to interpret exclusions in insurance policies. USL argues even if the "but for"

9

test can be applied, there must be a causal connection found between the injury and the events excluded by the policy:  here the alleged misrepresentations and omissions broke the chain of causation between pollution and the underlying claims.  Finally, USL relies heavily on a Sixth Circuit case, ***Owens Corning v. National Union Fire Insurance Co.***, No. 97-3367, 1998 WL 774109 (6th Cir. Oct. 13, 1998) (unpublished), where the Sixth Circuit found that an asbestos exclusion did not bar coverage for the securities claims against the insured.

National Union answers USL with one main contention – "All of the claims made against USL in the underlying lawsuits have one genesis:  pollution."  In other words, the pollution exclusion is unambiguous and absolutely bars coverage of the securities and derivative claims because they allege, arise out of, are based upon, are attributable to, or involve, directly or indirectly, "the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants."  National Union points out the pollution exclusion applies to all claims, "including but not limited to a Claim alleging damage to [USL] or its securities holders."  Because the factual allegations in both underlying suits fall squarely within the scope of the pollution exclusion, National Union asserts it has no duty to indemnify USL.

National Union contends that absolute pollution exclusions similar to the one in the Policy have been consistently declared

10

clear and unambiguous and thus are enforced by Texas courts. *See*

*CBI Indus.*, 907 S.W.2d at 521; *E&L Chipping Co. v. Hanover Ins.*

*Co., Inc.*, 962 S.W.2d 272, 277 (Tex. App.–Beaumont 1998, no pet.

h.) (describing a similar pollution exclusion as "clear and

susceptible of only one possible interpretation"). National Union

notes that no Texas case has specifically addressed the

applicability of the pollution exclusion to claims under a

directors, officers, and corporate liability policy but cites cases

from other district and circuit courts for the proposition that

coverage is properly denied when the wrongful acts of the company

and its directors and officers are inextricably intertwined, even

indirectly, with pollution as indicated in the plain language of

the exclusion. *See* *High Voltage Eng'g Corp. v. Fed. Ins. Co.*,

981 F.2d 596, 602 (1st Cir. 1992); *Employers Ins. of Wausau v.*

*Duplan Corp.*, 899 F. Supp. 1112, 1128 (S.D.N.Y. 1995).[3]

National Union submits the language of the pollution exclusion

is broad, much broader than USL chooses to admit by focusing only

on the phrase "arising out of" – "[I]t is not possible to credibly

deny that the factual allegations in the underlying lawsuits are

***based upon, attributable to, and involve***, both directly and

---

[3] USL argues that both these cases concerned personal injury or property damage, rather than the type of loss at issue here. However, what USL does not point out is that in *Duplan*, the district court noted that even if there was a breach of fiduciary claim made against the insured, such claim also would be barred by the pollution exclusion. 899 F. Supp. at 1128.

11

indirectly, the illegal polluting activities of [USL]." (Emphasis added). National Union answers USL's argument that if there are both covered and excluded independent causes of the loss, the insurer is liable; that doctrine does not apply here because there is no independent, intervening, covered cause of the loss. Polluting activities committed by USL and its directors and officers are precisely what was misrepresented and not disclosed to USL's shareholders and are thus "inextricably intertwined" with the company's and its shareholders' losses. Therefore, the causes are concurrent, which renders National Union not liable. *N. River*, 909 F.2d at 137. National Union asserts that even if the pollution exclusion had only contained "arising out of" language, the causal nexus between USL's alleged misrepresentations about pollution and pollution under the exclusion is fulfilled.

To answer USL's contention that the *King* case rejected the "but for" test which the district court applied from *Scottsdale*, National Union responds that *King* is inapposite here. National Union is correct. *King* is limited to the situation where a policy contains an "occurrence" requirement that must be triggered before an employer can be covered for an employee's intentional actions. 85 S.W.3d at 190-91 (distinguishing our Circuit's "but for" test in these circumstances because "there would be no cause of action against the employer but for the employee's intentional acts and therefore there is no 'occurrence' to invoke the policy").

12

Instead, we found that whether an "occurrence" triggered coverage was to be determined from the insured's standpoint. *Id.* at 188. National Union correctly asserts the "but for" test is in all other respects still good law; "the phrase 'arise out of' should be interpreted as requiring a 'but-for' causal relationship." *Waffle House, Inc. v. Travelers Indem. Co.*, No. 2-01-298-CV, 2003 WL 21666438, at *4 (Tex. App.–Fort Worth, July 17, 2003, writ denied) (citing *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 46 Tex. Sup. Ct. J. 866, 2003 WL 21468776, at *4 (Tex. June 26, 2003)). The "but for" test applies here to the broadly worded pollution exclusion. That is, National Union argues that the underlying claims would not exist "but for" USL's excluded polluting activities. Finally, National Union discounts USL's reliance on *Owens Corning*. In that case, the Sixth Circuit completely discounted the pollution exclusion in the policy because it was not "specific, clear, and exact" as required by Ohio law. *Owens Corning*, 1998 WL 774109, at *6. National Union asserts Ohio law is not analogous at all to Texas law; Ohio law looks at whether the "chain of events [leading to the loss] was unbroken," *id.* at *4, while Texas law only considers whether there is an "incidental relationship" between the loss and the excluded conduct. *Scottsdale*, 173 F.3d at 943.

We find the district court here correctly determined that the terms of the Policy's pollution exclusion were clear and neither patently nor latently ambiguous. Likewise, the court also properly

13

found that the losses described in the factual allegations of the securities and derivative suits bore more than an incidental relationship to the broad polluting conduct excluded in the Policy and that "but for" such illegal activities those underlying claims would not exist. Thus, the district court did not err in finding National Union had no duty to indemnify USL.

**Whether the district court erred in finding National Union had no duty to advance defense costs to USL under the Policy.**

The Policy provided that National Union would advance defense costs to USL "pursuant to the terms herein" and "prior to the final disposition of a Claim." The Policy defined "Defense Costs" as "reasonable and necessary fees, costs, and expenses . . . resulting solely from the investigation, defense and appeal of a Claim against the Insureds . . . ." If any exclusion were to apply, the Policy provided that "[t]he Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured." The definition of "Loss" included "Defense Costs." Thus, National Union was only obligated to advance defense costs to USL for claims covered under the Policy.

USL's again argues that the pollution exclusion does not exclude coverage and so National Union is obligated under the Policy to advance defense costs for the securities and derivative suits. National Union replies that under the plain terms of the pollution exclusion and the Policy, it has no duty to advance any defense costs to USL.

14

Because the district court was correct in its determination that the Policy's clear pollution exclusion eliminated National Union's duty to indemnify USL for losses relating to the underlying securities and shareholder derivative suits, we find the court did not err in denying USL defense costs under the Policy.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the district court did not err in granting summary judgment to National Union. Therefore, we AFFIRM the decision of the district court.

**AFFIRMED.**