United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 10, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 03-21197

————————

ALLSTATE INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

versus

DISABILITY SERVICES OF THE SOUTHWEST INC; GAIL
LOFTON, Personal Representative of the Estate of Kenneth Ray
Lofton; GAIL LOFTON as next friend of Kena Lofton and Sylvester
Lofton, minors,

Defendants-Counter Claimants-Appellants.

Appeal from the United States District Court
For the Southern District of Texas

Before HIGGINBOTHAM, DAVIS, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This insurance dispute arises out of the death of Kenneth Ray Lofton ("KRL"), a quadriplegic, while in the care of Disability Services of the Southwest Inc. ("DSSW"). KRL's family ("the Lofton family") sued DSSW, claiming that DSSW was negligent in its provision of medical care to KRL and in its failure to provide KRL with a usable telephone and emergency response device (collectively "communication devices") for emergencies. Allstate Insurance Company ("Allstate") sought a

declaratory judgment in the district court ruling that it had no duty to defend its insured, DSSW, in the lawsuit brought against DSSW by the Lofton family. The parties agreed to proceed before a magistrate judge. The magistrate judge granted Allstate's motion for summary judgment, ruling that Allstate was not required to defend DSSW in the underlying suit based on an exclusion in the insurance policy. DSSW and the Lofton family appeal the magistrate's grant of summary judgment in favor of Allstate.

I

KRL entered DSSW's 24-Hour Shared Attendant Program ("Program") at the Airport Landing Apartments on November 10, 2000. The Program is administered by the Texas Department of Human Services ("TDHS"), which contracted with DSSW to provide care for the residents of the apartments. KRL, a quadriplegic unable to use his legs or arms, was able to speak without difficulty and use a mouth stick to perform certain tasks. KRL needed assistance, however, for all of his daily living activities. Under the terms of the contract between the Texas Department of Human Services and DSSW, DSSW was obligated to provide assistance for KRL's daily living.

Within two or three days of arriving at the apartments, KRL developed a severe urinary tract infection. KRL was unable to ask for medical assistance because his bedroom did not have the communication devices. Although there was a telephone located outside his bedroom, KRL could not reach it as a quadriplegic, and would not have been able to use it because it could not be activated with a mouth stick. Unable to contact anyone to alert them of his condition, KRL died on November 14))four days after arriving at the apartments.

The Lofton family brought suit against DSSW, alleging that DSSW failed to provide adequate medical care, which led to Lofton's infection and his subsequent death. In the alternative, they allege

-2-

that regardless of the cause of the infection, DSSW failed to provide the communication devices. It

is clear, however, that in this case the reason KRL allegedly needed a telephone was to obtain

emergency medical assistance directly or through his family or other intermediaries. As a result, they

contend that KRL was unable to call for help, thus, making his infection fatal.

When KRL died, DSSW was insured by Allstate under a commercial general liability policy.

The policy covers claims of bodily injury or property damage "caused by an 'occurrence' that takes

place on the 'coverage territory.'" The policy excludes any bodily injury or property damage arising

out of the rendering or failure to render medical service, treatment, advice or instruction or any health

or therapeutic service, treatment, advice or instruction (collectively "medical services").[1] Allstate filed

its motion for declaratory judgment claiming it owed no duty to defend DSSW because KRL's injuries

fell under the exclusion of coverage. The magistrate judge agreed, and granted summary judgment

in favor of Allstate.

## II

We review the district court's rulings on summary judgment motions *de novo*, employing the

---

[1] Under the heading "Exclusion – Services Furnished by Health Care Providers", the policy
states

> this insurance does not apply to "bodily injury", "property damage" or
> "personal and advertising injury" arising out of:
> 1. The rendering or failure to render: a. Medical, surgical, dental, x-
>    ray or nursing service, treatment advice or instruction, or the
>    related furnishing of food or beverages; b. Any health or therapeutic
>    service, treatment, advice or instruction; or c. Any services,
>    treatment, advice or instruction for the purpose of appearance or
>    skin enhancement, hair removal or replacement of personal
>    grooming.
> 2. The furnishing or dispensing of drugs or medical, dental or surgical
>    supplies or appliances; or
> 3. The handling or treatment of dead bodies, including autopsies,
>    organ donation or other procedures.

same analysis as the district court. *Wyatt v. Hunt Plywood Co., Inc*. 297 F.3d 405, 408 (5th Cir. 2002). Summary judgment is proper when the pleadings and evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). Interpretation of an insurance policy is a question of law that we review *de novo*. *Performance Autotech II, Ltd. v. Mid-Continent Cas. Co.,* 322 F.3d 847, 853 (5th Cir. 2003). This is a diversity case and the parties agree that Texas law applies. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78-79 (1938).

In Texas, an insurer's duty to defend is determined solely by the "four corners" of the factual allegations in the underlying co mplaint and the "four corners" of the insurance policy. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998); *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex. 2002). This is known as the "eight corners" rule. *King,* 85 S.W.3d at 187. The pleadings and allegations are liberally interpreted and their truth is presumed. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines Inc*., 939 S.W.2d 139, 141 (Tex. 1997). The pleadings must allege facts within the scope of coverage for a duty to defend the insured to exist. *King,* 85 S.W.3d at 187. If coverage is found for any part of a suit, the insurer must defend the entire suit. *St. Paul Fire & Marine Ins. Co. v. Greentree Fin. Corp.*))*Tex.*, 249 F.3d 389, 391 (5th Cir. 2001). However, there is no duty to defend if the covered cause is related and interdependent to the excluded cause of injury. *Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyds Ins. Co. of Texas,* 875 S.W.2d 788, 791 (Tex. App.))Eastland 1994, writ denied). "[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Merchants Fast Motor Lines Inc*., 939 S.W.2d at 141(citing *Heyden Newport Chem.*

*Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex. 1965). Exceptions and limitations in an insurance policy are strictly construed against the insurer. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 99 F.3d 695, 701 (5th Cir. 1996). If multiple interpretations of the insurance contract are reasonable, the court must construe the contract against the insurer, especially when exceptions to liability are considered. *Travelers Indem. Co. v. Citgo Pet. Co.*, 166 F.3d 761, 769 (5th Cir. 1999).

DSSW admits that its failure to provide adequate medical care is excluded under the Allstate insurance policy. It contends, however, that the Lofton family's claim that DSSW was negligent in failing to provide communication devices is not excluded by the medical services provision; thus, invoking Allstate's duty to defend. This claim is based on the theory that if KRL had access to a telephone or the emergency response device, he would have been able to telephone his family who would have taken him to a hospital where he would have received lifesaving care. Allstate asserts the failure to provide communication devices is inseparable from the Lofton family's claim that DSSW failed to provide adequate medical care. Therefore, they argue there is no duty to defend DSSW under the medical services policy coverage exclusion.

The question before us is whether there is a *potential* cause of injury pleaded and not covered by the policy exclusions. In doing so, we must not "imagine factual scenarios which might trigger coverage." *Merchants Fast Motor Lines Inc.*, 939 S.W.2d at 142. It is immaterial that one claim against DSSW was clearly excluded under the insurance policy. "Texas courts will allow claims against an insured to proceed when two separate and independent 'but for' causes of the injury sued on))one excluded under the policy and one not))are involved." *Travelers Indem. Co.*, 166 F.3d at 771.

In their complaint, plaintiffs plead in the alternative that "[w]ithout regard to the cause of his emergency state, if LOFTON had the ability to summon assistance on a usable telephone or emergency response device, he could have and would have called his family, who could have and would have secured emergency assistance to get LOFTON to the hospital." COMPL. at 12. Therefore, the dispositive inquiry is whether access to a telephone or emergency response device is excluded in coverage as a medical service under the policy.

DSSW relies on *Guaranty Nat'l Ins. Co. v. North River Ins. Co.*, 909 F.2d 133 (5th Cir. 1990) to support its claim that the failure to provide the communication devices was an administrative breach, rather than medical negligence. In *Guaranty Nat'l*, the insurance dispute stemmed from an underlying lawsuit based on the suicide of a patient who jumped out of her hospital room window. *Id.* at 134. The plaintiffs in the underlying suit claimed that the hospital (1) failed to monitor and observe the patient properly; (2) failed to maintain the windows in the patients room in a proper manner to prevent escape of suicide; and (3) failed to maintain an adequate staff of properly trained personnel in the psychiatric unit. *Id.* The relevant insurance policy maintained by the hospital had an exclusion for liability arising from medical malpractice and professional services. *Id.* at 135. The court found that the decision to not place fixed protective screens over the windows, which could have prevented the suicide, was an administrative business decision rather than a professional medical decision excluded from coverage. *Id.* at 136. This administrative business decision, the court ruled, was a cause of death independent of the failure to observe the patient, because the jury found that each separately was a proximate cause of the patient's death. *Id.* at 137.

Though interpreting a professional services exclusion for attorneys, the case of *Atlantic Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.,* 982 S.W.2d 472 (Tex. App.) ) Dallas, 1998) is useful in

analyzing the professional services exclusion in *Guaranty Nat'l*. In determining what falls under the rubric of "professional services", we are t o consider the inherent skills typified by that profession. There, the court writes, "[t]o qualify as a professional service, the task must arise out of acts particular to the individual's specialized vocation." *Id*. at 476-77. The court found that an attorney's letter to solicit a physician's former patient was not a professional service within the meaning of the exclusion because it was merely incidental to and not constituting the practice of law. *Id.* at 476.

Communication with patients is vital to providing "health" or "nursing" services. *See, e.g., Conant v. Walters*, 309 F.3d 629, 636 (9t h Cir. 2002) ("An integral component of the practice of medicine is the communication between a doctor and a patient."). If KRL had not been a quadriplegic, he would not have required communication devices that could be operated by a mouth stick. Providing this service to KRL is typical, if not integral, to the provision of a 24- Hour Shared Attendant Program for someone in KRL's condition, as evidenced in the contract between DSSW and TDHS. Hence, this is not analogous to *Guaranty Nat'l*, in which the hospital decided to use screws in the window sashes rather than fixed, protective screens. The contract between DSSW and TDHS makes clear the purpose of the communication devices: it required DSSW to "[a]rrange for each household to have a telephone or an emergency response device for requesting assistance in emergency situations and for requesting assistance with activities for daily living." Even DSSW understood the emergency nature of the communication devices. DSSW's Fifth Amended Original Complaint alleges that KRL would have a telephone in his bedroom "*for emergencies*." COMPL. at 4 (emphasis added). Thus, the claim that KRL's death was caused by the failure to provide communication devices is inseparable from the Lofton family's claim that DSSW failed to provide adequate medical care, and the medical services exclusion applies. Accordingly, Allstate has no duty

-7-

to defend DSSW.

## III

The magistrate judge's order granting summary judgment is AFFIRMED.