876 P.2d 227 (1994)
117 N.M. 711
MILLERS CASUALTY INSURANCE COMPANY OF TEXAS, Plaintiff-Appellee,
v.
Estefana FLORES, Defendant-Appellant.
No. 20190.
Supreme Court of New Mexico.
May 25, 1994.
*228 Malott, Barudin & Associates, Alan M. Malott, Albuquerque, for appellant.
Rodey, Dickason, Sloan, Akin & Robb, P.A., Charles K. Purcell, Albuquerque, for appellee.
William H. Carpenter, Michael B. Browde, Albuquerque, for amicus curiae NM Trial Lawyers.

OPINION
BACA, Justice.
Defendant-Appellant, Estefana Flores ("Flores") appeals from a trial court order denying her motion for summary judgment and granting summary judgment in favor of Plaintiff-Appellee, Millers Casualty Insurance Company of Texas ("Millers"). The trial court concluded that an insurance policy issued by Millers to Dr. Harry Winkworth ("Dr. Winkworth") excluded coverage for injuries that Flores suffered at the hands of Dr. Winkworth's assistant. On appeal, we address whether the trial court erred in granting summary judgment in favor of Millers. We review this case under SCRA 1986, 12-102(A)(1) (Repl.Pamp.1992), and affirm.

I.
Flores, a patient of Dr. Winkworth, suffered a debilitating stroke after Florence Curtis ("Curtis"), Dr. Winkworth's unsupervised and untrained assistant, gave Flores a contraindicated injection of estrogen. In September of 1989, Flores brought suit against Dr. Winkworth, his professional corporation, and Curtis. On May 2, 1990, Millers, having sold Dr. Winkworth a Deluxe Businessowners Policy, filed a declaratory judgment action against Flores, Dr. Winkworth, and Curtis. Based on an exclusion in the policy, Millers sought a declaration that it had no duty to defend or indemnify Dr. Winkworth or his corporation for the claims raised in Flores's lawsuit.
On April 1, 1991, Flores made a motion for summary judgment in Millers's declaratory judgment action. Flores contended that the insurance policy sold by Millers to Dr. Winkworth required Millers to defend Dr. Winkworth, and obligated Millers to satisfy any judgment or settlement in her case against Dr. Winkworth. On April 9, 1991, Millers filed a response to Flores's summary judgment motion and a cross-motion for summary judgment. Millers claimed that the policy issued to Dr. Winkworth "unambiguously excluded liability for injury arising out of `professional services,'" and thus, did not provide coverage for Flores's medical malpractice claims against Dr. Winkworth and Curtis.
The trial court held a hearing on the summary judgment motions on August 27, 1991. Following argument of counsel, the trial court denied Flores's motion for summary judgment and granted Millers's cross-motion. *229 Flores appeals the trial court's ruling to this Court.

II.
On appeal, we address whether the trial court correctly granted summary judgment in favor of Millers. Summary judgment is properly granted in a case when no genuine issues of material fact are presented and the moving party is entitled to judgment as a matter of law. SCRA 1986, 1-056(C) (Repl.Pamp.1992); New Mexico Physicians Mut. Liab. Co. v. LaMure, 116 N.M. 92, 100, 860 P.2d 734, 742 (1993). Both parties agree that no issues of material fact are presented. Thus, we determine whether the trial court correctly concluded that Millers was entitled to judgment as a matter of law.
The Deluxe Businessowners Policy that Millers sold to Dr. Winkworth stated:
[Millers] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies.

* * * * * *
[T]his policy does not apply:

* * * * * *
8. to bodily injury or property damage due to rendering of or failure to render any professional service, including but not limited to:
(a) legal, accounting, advertising, engineering, drafting, architectural, and
(b) medical, dental, pharmacological, cosmetic, hearing aid, optical, or ear piercing services....
(Emphasis omitted). In granting summary judgment for Millers, the trial court concluded that Flores's claims sounded in medical malpractice, and that the insurance policy's professional services exclusionby including medical services in the definition of "professional service"precluded coverage for such claims.
Flores raises several arguments to assert that the professional services exclusion should not preclude coverage for her claims. Flores concedes that the primary purpose of the Businessowners policy was to cover against liability arising from premises liability, and that Curtis's act of giving her the contraindicated injection constituted the rendering of a medical service for which coverage was excluded. Flores argues, however, that the professional services exclusion does not apply to her claims that Dr. Winkworth negligently hired, failed to train and inadequately supervised Curtis.[1] Flores contends that Dr. Winkworth's decision to hire an underqualified employee, and his failure to adequately train and supervise Curtis, were administrative decisions rather than the rendition of medical services, and that these decisions were removed in time from Curtis's act of failing to render adequate medical care. Flores contends that Dr. Winkworth's bad administrative decisionsrather than constituting the rendition of injury-causing medical servicesgave rise to a `deficiency in the premises' for which coverage under the Businessowners policy must apply.
We find Flores's arguments unpersuasive. Although this case presents an issue of first impression in New Mexico, numerous cases have upheld professional services exclusions on a variety of grounds. In one case, Mason v. Liberty Mutual Insurance Co., 370 F.2d 925, 926 (5th Cir.1967), the plaintiff sued after suffering injuries as the result of an injection administered by a student nurse. After losing summary judgment at the trial court level, the plaintiff appealed, arguing that "there was administrative, as distinguished from professional, negligence in permitting a student nurse to administer the treatment." Id. The Fifth Circuit Court of Appeals upheld the professional services exclusion clause, applying the rule that when determining what constitutes professional services, "we should look not to the title or *230 the character of the party performing the act but to the act itself." Id. (quoting D'Antoni v. Sara Mayo Hosp., 144 So.2d 643, 646 (La.Ct.App.1962)); cert. denied); see also Multnomah County v. Oregon Auto. Ins. Co., 256 Or. 24, 470 P.2d 147, 150 (1970) (excluding coverage under a professional services exclusion, and holding that when "determining whether a particular act or omission is of a professional nature, the act or omission itself must be looked to and not the title or character of the party who performs or fails to perform the act").
Other cases have upheld the effectiveness of professional services exclusions by holding that while nonprofessional personnel may perform some duties that lead to liability, the physician bears ultimate responsibility for the duty performed, and thus the duty is part of rendering professional services. See Alpha Therapeutic Corp. v. St. Paul Fire & Marine Ins. Co., 890 F.2d 368, 370-71 (11th Cir.1989); Northern Ins. Co. of N.Y. v. Superior Court, 91 Cal.App.3d 541, 154 Cal.Rptr. 198, 200 (1979). One court, in construing a policy that excluded coverage for "professional services" and "business pursuits," noted that all the allegations, regardless of the underlying legal theories, arose out of the same professional activity. See Fire Ins. Exch. v. Alsop, 709 P.2d 389, 390-91 (Utah 1985). Because the professional activity was conceded to be a "business pursuit," and was also considered to be the rendering of "professional services," coverage under the policy was excluded. Id. at 391.
In the instant case, we find the rationale employed in Northern Insurance Co. of New York compelling. The fact that a physician utilizes a nonphysician assistant to perform a professional duty does not "alter the professional nature of that nondelegable duty." 154 Cal.Rptr. at 200. It is undeniable that the injury to Flores occurred "as a direct result of the performance of professional services" for which Dr. Winkworth had ultimate responsibility. Id. Coverage for injuries caused by the performance of these professional services is excluded under Dr. Winkworth's policy.
Flores contends that "Dr. Winkworth's failure to provide competent personnel in his practice cannot reasonably be seen as `an integral part of the rendering of medical care.'" We disagree. In our view, Dr. Winkworth was in the business of providing medical services to patients. The hiring and supervision of employees to assist in giving care to his patients constituted an integral part of providing medical services to these patients. See Perkins v. Kearney, 155 A.D.2d 191, 553 N.Y.S.2d 552, 553 (1990) (stating that the actions of those personnel assisting a physician are a central part of the process of rendering medical treatment). Dr. Winkworth's failure to hire a competent assistant, as well as his failure to adequately train and supervise her, was a failure to render adequate medical services. Cf. Bell v. Sharp Cabrillo Hosp., 212 Cal.App.3d 1034, 260 Cal.Rptr. 886, 896-97 (1989) (noting that "a hospital has a professional responsibility to insure the competence of its medical staff," and holding that failure to fulfill "that responsibility constitutes `professional negligence' involving conduct necessary to the rendering of professional services"). Under the policy at issue in this case, coverage for Dr. Winkworth's failure to render adequate medical services, which gave rise to Flores's injuries, was excluded from coverage under the "professional services" clause.
Flores relies heavily on Guaranty National Insurance Co. v. North River Insurance Co., 909 F.2d 133 (5th Cir.1990), in arguing that Dr. Winkworth's decisions regarding the hiring, training and supervision of Curtis were administrative in nature, and did not require professional judgment. In Guaranty National, a patient admitted to a hospital for psychiatric care jumped from a fourth floor window to her death. 909 F.2d at 134. A jury awarded the patient's survivors $968,985.82 in damages against the hospital. Id. In a subsequent dispute between the hospital's insurers, North River Insurance Company ("North River") denied coverage for the hospital's liability, contending that a professional services clause in the hospital's comprehensive general liability insurance policy excluded coverage for the patient's death. Id. at 134-35. The trial court found North River liable for the judgment, and North River appealed. Id. at 135. On appeal, the *231 Fifth Circuit Court of Appeals affirmed, holding that:
The decision to protect the ... patient[ ] through screws in the window sashes rather than through fixed, protective screens over the windows was an administrative, business decision and was not a professional, medical decision. We conclude, therefore, that the professional services exclusion in the North River policy does not reach the error for which the hospital was found to be liable.
Id. at 136. Flores argues that under Guaranty National, Dr. Winkworth's hiring, training, and supervising decisions should not trigger the professional services exclusion in his policy.
We find the case at bar distinguishable from Guaranty National. In that case, the Court focused on how the windows were secured and characterized the decision about securing the windows as administrative. In contrast, we believe that Dr. Winkworth's decision to allow Curtis to administer care to his patients, unlike the administrative decision about securing windows, involved an exercise of professional judgment. As a physician, Dr. Winkworth had to rely on his professional judgment to decide whether Curtis was adequately trained and competent enough to provide care to his patients. Under these circumstances, Dr. Winkworth's hiring, training, and supervising decisions involved professional judgment, and the professional services exclusion in Dr. Winkworth's policy applies to bar coverage.
Citing cases that distinguish between ordinary negligence and medical malpractice, see, e.g., DeLeon v. Hosp. of Albert Einstein College of Medicine, 164 A.D.2d 743, 566 N.Y.S.2d 213, 215-17 (1991), Flores argues that the decisions Dr. Winkworth made in hiring, training, and supervising Curtis amounted to ordinary negligence, which was not excluded under the policy. These cases, which, for the most part, address whether asserted claims sound in negligence or medical malpractice for the purpose of determining the applicable statute of limitations, are not on point and therefore, not very helpful in resolving this appeal. The case at bar does not require us to define the distinction between medical malpractice and ordinary negligence. Instead we are required to decide whether the hiring, training and supervision of Curtis was part of the medical services Dr. Winkworth offered to his patients. We conclude that the hiring, training, and supervising of employees who rendered care to patients comprised one aspect of the medical services Dr. Winkworth offered to his patients. The injuries resulting from these services are excluded under Dr. Winkworth's policy.
Finally, both Flores and the New Mexico Trial Lawyers Association ("Amicus"), filing an amicus brief on Flores's behalf, argue that the professional services exclusion is ambiguous and, consequently, must be construed against Millers to provide coverage for Flores's injuries. Both Flores and Amicus rely on Williams v. Herrera, 83 N.M. 680, 496 P.2d 740 (Ct.App.1972), to argue that the policy's professional services exclusion is ambiguous. In Williams, the Court of Appeals concluded that a professional services exclusion in a medical payments insurance policy was ambiguous where the policy failed to define the words "professional services," and New Mexico law did not otherwise define these words. 83 N.M. at 684-85, 496 P.2d at 744-45.
The policy in the instant case, unlike the policy in Williams, defined the term "professional service" by enumerating thirteen activities that constitute professional services, and included within this definition "medical" services. Nevertheless, Flores maintains that the exclusion is ambiguous because the exclusion "does nothing to define the scope of what is included within those [medical] services." We think it would be unreasonable to require Millers to provide an exhaustive list of noncovered activities for each of the thirteen professional activities listed in the professional services clause in order for the clause to be considered unambiguous. It is sufficient that the professional services clause includes medical services among the itemized list of professional services for which coverage is excluded. See Vihstadt v. Travelers Ins. Co., 103 N.M. 465, 466, 709 P.2d 187, 188 (1985) (holding that the trial court erred by ruling that an insurance policy *232 was ambiguous "because it lacked a definition for the term `accidental injury or sickness.'"); Security Mut. Cas. Co. v. O'Brien, 99 N.M. 638, 641, 662 P.2d 639, 642 (1983) (holding that exclusion clauses were unambiguous even though certain terms were not defined). We hold that the exclusion clause in Dr. Winkworth's policy is not ambiguous.
For the foregoing reasons, we conclude that Millers was entitled to judgment as a matter of law. We hold that the trial court did not err in granting summary judgment in favor of Millers. The judgment of the trial court is affirmed.
IT IS SO ORDERED.
FRANCHINI and FROST, JJ., concur.
NOTES
[1] At the time Curtis was employed by Dr. Winkworth, she had no training as a nurse or medical assistant. While she had worked briefly for another physician and was trained as a phlebotomist, the majority of her work experience was in retail and clerical work. On September 11, 1991, the trial court entered judgment ratifying a mediated agreement whereby Flores was awarded $500,000 for her malpractice claims.