**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

**April 23, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

CHISHOLM'S-VILLAGE PLAZA LLC,

    Plaintiff - Appellee,

v.

THE CINCINNATI INSURANCE
COMPANY,

    Defendant - Appellant,

and

TRAVELERS COMMERCIAL
INSURANCE COMPANY,

    Defendant.

------------------------------

COMPLEX INSURANCE CLAIMS
LITIGATION ASSOCIATION,

    Amicus Curiae.
_____

CHISHOLM'S-VILLAGE PLAZA LLC,

    Plaintiff - Appellee,

v.

TRAVELERS COMMERCIAL
INSURANCE COMPANY,

    Defendant - Appellant,

No. 23-2133
(D.C. No. 2:20-CV-00920-JB-KRS)
(D. N.M.)

No. 23-2134
(D.C. No. 2:20-CV-00920-JB-KRS)
(D. N.M.)

and

THE CINCINNATI INSURANCE
COMPANY,

     Defendant.

------------------------------

COMPLEX INSURANCE CLAIMS
LITIGATION ASSOCIATION,

     Amicus Curiae.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **MATHESON**, and **EID**, Circuit Judges.
_____

This diversity dispute concerns a question about whether two insurers owed a policyholder a duty to defend against a suit alleging contamination under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601–75 ("CERCLA"). Plaintiff Chisholm's Village Plaza, LLC ("Chisholm's"), the insured, brought suit against Defendants Fidelity and Guaranty Insurance Underwriters ("Fidelity") and Cincinnati Insurance Company ("Cincinnati"), the insurers. Chisholm's argues that the insurers had a duty to defend Chisholm's from the property damage alleged in the CERCLA suit. But Fidelity and Cincinnati's insurance policies for Chisholm's contain an absolute pollution

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

exclusion. And the exclusions, the insurers argue, unambiguously deny Chisholm's coverage.

In a lengthy opinion, the district court disagreed with the insurers. The district court held, as a matter of New Mexico law, that the absolute pollution exclusions were ambiguous and, as a result, the insurers owed Chisholm's a duty to defend. To so hold, the court predicted that the New Mexico Supreme Court would adopt an interpretive approach to pollution exclusions taken only by one state. The district court alternatively reasoned that it would reach the same outcome even if the New Mexico Supreme Court did not adopt that outlier interpretive approach because of the lone fact that other states disagree in their approaches to reading absolute pollution exclusions. In all key respects, the court erred.

We hold that the New Mexico Supreme Court would find that the policies unambiguously preclude coverage over the CERCLA complaint's alleged release of contaminants. As such, we reverse the district court's grant of Chisholm's' motion for summary judgment and denials of Fidelity and Cincinnati's motions for summary judgment.

## I.

These cases arise out of a CERCLA action against Chisholm's and others as part of a decades-long effort to respond to a two-mile-long chemical plume in Las Cruces. The City of Las Cruces and the County of Doña Ana brought suit in an amended complaint against Chisholm's, asserting claims for cost recovery and contribution. Specifically, Las Cruces and Doña Ana alleged that a dry-cleaning

3

business that had at one time occupied Chisholm's' property "released" hazardous substances into the soil and "contaminated" water at the site.[1]  App'x Vol. IV at 943; *see* App'x Vol. I at 131–32, 136–38, 140.

Las Cruces and Doña Ana sought to hold Chisholm's jointly and severally liable with other non-governmental entities for the costs of cleaning up the entire site. In response, Chisholm's sought coverage from its property insurers, Fidelity and Cincinnati.

Chisholm's' first insurance policy is with Fidelity.  In relevant part, Fidelity's policy provides coverage for "BODILY INJURY AND PROPERTY DAMAGE LIABILITY."  App'x Vol. IV at 946.  Specifically, Fidelity contracted to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  *Id.*  Also, Fidelity stated that it would "have the right and duty to defend the insured against any 'suit' seeking those damages."  *Id.*

But the coverage has some limits.  Fidelity's policy contains an "Absolute Pollution Exclusion."  *Id.*  That exclusion states that "insurance does not apply to" pollution.  *Id.* at 946–47.  The exclusion specifies that the policy does not cover

---

[1] CERCLA, 42 U.S.C. § 9607, provides a right of action for private parties (including municipal and county governments) to recover the costs of responding to the release, or threatened release, of hazardous substances into the environment from past and present owners of contaminated facilities.  Here, we have Chisholm's, the owner of a property that had previously been occupied by a dry-cleaning business. The dry-cleaning business allegedly released hazardous substances and contaminated water.

4

"'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured." *Id.* at 947. The exclusion also denies coverage for "[a]ny loss, cost or expense arising out of any . . . [r]equest, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants." *Id.* And in turn, the policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste." *Id.*

Chisholm's' second policy is with Cincinnati. That policy also insures property damage, provides a duty to defend, and contains an absolute pollution exclusion. Like Fidelity's exclusion, Cincinnati's exclusion states that its "insurance does not apply to . . . 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape or emission of pollutants . . . [a]t or from any premises, site or location which is or was at any time owned or occupied by . . . any insured." *Id.* at 948. And pollutant means "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste." *Id.* at 1045–46.

Unlike Fidelity, though, Cincinnati has one exception to part of the exclusion, called the alternative liability provision. That provision states that certain exclusion

5

provisions "do not apply to liability for damages because of 'property damage' that the insured would have in the absence of such a request, demand, order or statutory or regulatory requirement, or such claim or 'suit' by or on behalf of a governmental authority." *Id.* at 1026.

After being named as a defendant in the CERCLA lawsuit, Chisholm's submitted a claim under the general liability policies that the insurers had issued to Chisholm's. Neither insurer independently investigated the allegations in the lawsuit. Instead, they compared the CERCLA complaint to their policies' exclusions, and they denied coverage. Subsequently, Chisholm's successfully resolved the CERCLA lawsuit and obtained a dismissal of the claims.

Thereafter, Chisholm's filed this diversity suit in federal court,[2] alleging, among other things, breach of contract for failing to pay Chisholm's' defense costs in the CERCLA lawsuit. Chisholm's also alleged insurance bad faith under the New Mexico Insurance Practices Act, N.M. Stat. Ann. § 59A-16-3, primarily based on the insurers' failure to conduct any investigation that would have revealed at least an uncertainty about coverage and thus would have triggered the duty to defend.

Fidelity filed a motion for summary judgment, arguing that its absolute pollution exclusion barred coverage and that it had no duty to defend Chisholm's in the CERCLA lawsuit. Cincinnati also filed a motion for summary judgment, arguing

---

[2] There is diversity jurisdiction over this case under 28 U.S.C. § 1332, because the parties are all citizens of different states and the amount in controversy exceeded $75,000. App'x Vol. IV at 1007.

that it had no duty to reimburse Chisholm's' defense costs because the allegations in the CERCLA lawsuit fell squarely within its absolute pollution exclusion.

In response, Chisholm's filed a cross-motion for summary judgment on the duty to defend.  Chisholm's argued that the insurers had a duty to investigate and defend against a complaint that used ambiguous phrases (i.e., "hazardous substances"), which might allow for policy coverage.

After full briefing and a hearing, the district court issued a 119-page opinion, holding:  (1) the Supreme Court of New Mexico would follow an outlier approach to interpreting the absolute pollution exclusions that was most protective of the insured; (2) under that approach, the absolute pollution exclusions were ambiguous per se and as applied to this case; and (3) that ambiguity, construed against the insurers, created the potential for coverage and triggered the duty of both insurers to defend Chisholm's in the CERCLA action.

The district court then provided an alternative ground for summary judgment in favor of Chisholm's.  It reasoned, "[e]ven if New Mexico does not follow" the outlier approach to interpreting the pollution exclusions, there exists "sufficient legal ambiguity" as to "which approach New Mexico would follow," which rendered the CERCLA "complaint and [insurance] policies sufficiently ambiguous," prompting a duty to defend.  App'x Vol. IV at 1054.

In the end, the district court denied both insurers' motions, granted Chisholm's' motion, and concluded that Chisholm's was entitled to judgment as a

matter of law on its breach of contract and declaratory judgment claims.  Fidelity and Cincinnati each appealed separately, and this Court consolidated the appeals.

## II.

On appeal, Fidelity and Cincinnati challenge the district court's summary judgment ruling and argue that their policies unambiguously exclude a duty to defend the property damage alleged in the CERCLA complaint.  We agree.  Because Fidelity and Cincinnati have slightly different policies, we analyze each policy separately.  But in the end, our predictions of how the New Mexico Supreme Court would resolve this case remain the same:  the insurers would not owe a duty to defend Chisholm's.

We review de novo a district court's grant or denial of summary judgment on a legal issue and a district court's interpretation of state law.  *See Evanston Ins. Co. v. Desert State Life Mgmt.*, 56 F.4th 899, 905 (10th Cir. 2022).  In diversity jurisdiction cases, a federal court's "task is . . . simply to ascertain and apply the state law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (cleaned up); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Here, we apply New Mexico's substantive law.[3]

When applying a state's law, a federal court "must follow the most recent decisions of the state's highest court."  *Wade*, 483 F.3d at 665–66.  And "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do."  *Id.* at 666 (quoting *Wankier v. Crown Equip. Corp.*,

---

[3] The parties on appeal (and the district court below) all agree that New Mexico law applies to the interpretation of the policies in this case.  We do the same.

353 F.3d 862, 866 (10th Cir. 2003)).  In predicting how the state's high court would rule, a federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law."  *Id.* (cleaned up).

In New Mexico, "[t]he duty to defend is distinct from the duty to indemnify." *Knowles v. United Servs. Auto. Ass'n*, 832 P.2d 394, 395 (N.M. 1992).  The duty to defend is a "contractual obligation emanating from the insurance policy."  *Id.*  And the duty arises when a third party's complaint against the insured alleges facts that bring the case within the coverage of the policy.  *Id.*

"The obligation of the insurer is a question of contract law and will be determined by reference to the terms of the insurance policy."  *Id*. at 396.  "If the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required."  *Bernalillo Cnty. Deputy Sheriffs Ass'n v. County of Bernalillo*, 845 P.2d 789, 791 (N.M. 1992).

New Mexico courts "resolve questions regarding insurance policies by interpreting their terms and provisions in accordance with the 'same principles which govern the interpretation of all contracts.'"  *Ponder v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 960, 964 (N.M. 2000) (quoting *Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 976 (N.M. 1997)).  The interpretation of an insurance policy "proceeds with the primary goal of ascertaining the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract."  *Id.* (cleaned up).  "As

with other contracts, where an insurance policy's terms 'have a common and ordinary meaning, that meaning controls in determining the intent of the parties.'" *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 647 (N.M. 2012) (quoting *Battishill v. Farmers All. Ins. Co.*, 127 P.3d 1111, 1114 (N.M. 2006)). And "when the policy language is clear and unambiguous, [courts] must give effect to the contract and enforce it as written." *Ponder*, 12 P.3d at 964. Courts "should not 'create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations' about the meaning of a policy provision." *United Nuclear Corp.*, 285 P.3d at 647–48 (quoting *City of Santa Rosa v. Twin City Fire Ins. Co.*, 143 P.3d 196, 198 (N.M. 2006)).

But if "a policy term is 'reasonably and fairly susceptible of different constructions,' it is deemed ambiguous and 'must be construed against the insurance company as the drafter of the policy.'" *Id.* at 648 (quoting *Knowles*, 832 P.2d at 396); *see Richardson v. Farmers Ins. Co. of Ariz.*, 811 P.2d 571, 572 (N.M. 1991). New Mexico courts construe insurance contracts "as a whole," and if "any provisions appear questionable or ambiguous," courts "first look to whether the[] [provisions'] meaning and intent is explained by other parts of the policy." *Rummel*, 945 P.2d at 976. "The traditional rules of punctuation, syntax, and grammar may also help clarify a contractual ambiguity." *Id.* But "[i]f ambiguities cannot be resolved by examining the language of the insurance policy, courts *may* look to extrinsic

10

evidence."[4]  *Id.* at 977 (emphasis added) (citing *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993); and *Jaramillo v. Providence Wash. Ins. Co.*, 871 P.2d 1343, 1347–48 (N.M. 1994)).

## A.

We first assess whether Fidelity's policy unambiguously denies coverage, and if so, imposed no duty to defend against the property damage claims alleged in the CERCLA complaint.  We hold that the policy unambiguously denies coverage.

---

[4] In permitting consideration of extrinsic evidence, the New Mexico Supreme Court "retreated from the 'four-corners' standard," which limited courts to detecting ambiguity based solely on a contract's terms. *Jaramillo v. Providence Wash. Ins. Co.*, 871 P.2d 1343, 1347 (N.M. 1994).  We note, however, that New Mexico's caselaw states that courts *may*, not must, look at extrinsic evidence.  "In abandoning reliance only on the four-corners approach," the New Mexico Supreme Court has explained, courts applying New Mexico law "are now *allowed* to consider extrinsic evidence in determining whether an ambiguity exists in the first instance."  *Ponder*, 12 P.3d at 965 (emphasis added).  Courts have the extrinsic evidence option available because "a full examination of the circumstances surrounding the making of the agreement" can "often" be needed to "properly [] discern[]" "ambiguity or lack thereof."  *Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (N.M. 1993).  But as "important" as it has stated that the consideration of extrinsic evidence may be "to the initial determination of whether an ambiguity exists in [an] insurance policy" in a particular case, *United Nuclear Corp.*, 285 P.3d at 654; *see Mark V, Inc.*, 845 P.2d at 1235, the New Mexico Supreme Court has conspicuously stopped short of *mandating* that courts employ extrinsic evidence to assess potential ambiguities, *see United Nuclear Corp.*, 285 P.3d at 654 ("[A] reviewing court *may* use extrinsic evidence to answer the preliminary question of whether the language of an insurance agreement is clear on its face." (emphasis added)); *Mark V, Inc.*, 845 P.2d at 1235 ("The court is no longer restricted to the bare words of the agreement . . . but *may also* consider the context in which the agreement was made to determine whether the party's words are ambiguous." (emphasis added)).  So, under New Mexico law, the "consideration of extrinsic evidence" is not necessarily "required" in every case to discern whether a policy provision is ambiguous.  *Contra Ormrod v. Hubbard Broad., Inc.*, 328 F. Supp. 3d 1215, 1229 (D.N.M. 2018).

11

By its clear terms, Fidelity's policy excludes coverage for property damage arising out of the alleged *release* of substances that *contaminate*. Fidelity's policy specifies that it would "have the right and duty to defend" against a suit seeking "damages because of . . . 'property damage' to which this insurance applies." App'x Vol. IV at 946. But Fidelity's policy contains an "Absolute Pollution Exclusion," which states that "insurance does not apply to," among other things, the release of contaminants. *Id.* at 946–47. The exclusion specifies that the policy does not cover "'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, *release* or escape *of pollutants* . . . [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured." *Id.* at 947 (emphases added). And the exclusion goes on to define pollutants as "any solid, liquid, gaseous or thermal irritant or *contaminant*, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste." *Id.* (emphasis added).

With this understanding in mind, New Mexico caselaw requires that we turn to Las Cruces and Doña Ana's CERCLA complaint to see if the alleged facts potentially fall within or are excluded from coverage. *See Dove v. State Farm Fire & Cas. Co.*, 399 P.3d 400, 404 (N.M. Ct. App. 2017). And "[i]f the allegations of the complaint clearly fall outside the provisions of the policy," then Fidelity had no duty to defend Chisholm's in the CERCLA suit. *Bernalillo Cnty. Deputy Sheriffs Ass'n*, 845 P.2d at 791.

12

Looking to the CERCLA complaint, we see that the factual allegations fall within the scope of Fidelity's exclusion.  To begin, the complaint states that the hazardous substances *released* by a former dry-cleaning business on Chisholm's' property *contaminated* water:

- "The drinking water system owned by the City, and land owned by Plaintiffs, were *contaminated* by the United States, the U.S. Department of Defense, and the National Guard Bureau . . . . The City's drinking water system and Plaintiffs' land were also *contaminated* by dry cleaning operations [on Chisholm's' property.]"  App'x Vol. I at 131 (emphases added).

- "[T]he named current and former owners and operators of the *released substances* that are hazardous to human health and the environment into the soil and groundwater in Las Cruces.  They own, owned, operate, and/or operated facilities at which these *releases* occurred.  The *release* of these hazardous substances contributed to the plume of *contaminated* groundwater[.]"  *Id.* (emphases added).

- "Plaintiffs have spent millions of dollars on investigation and remediation of the Site, including but not limited to investigation of the nature and extent of *contamination*, and installation of a water treatment system and associated infrastructure."  *Id.* at 131–32 (emphasis added).

- "During approximately 21 years of dry[-]cleaning operations at this facility, hazardous substances, including PCE, were used and *released* to the soil and groundwater at and to the Site.  Chisholm's Village is the current owner of this facility."  *Id.* at 136–37 (emphasis added).

- Titling an entire section of a complaint "PCE Contamination" and alleging, "The Site consists of a 3.5 billion gallon plume of PCE-*contaminated* groundwater that spans 1.8 miles by 0.5 mile.  This plume, as shown through individual well *contamination*, affects the public water supply for the City, which supplies drinking water to over 100,000 people."  *Id.* at 137–38 (emphases added).

- "Plaintiffs have undertaken significant investigative and remedial measures to treat the *contamination* of groundwater caused by Defendants.  *Id.* at 140 (emphasis added).

13

- "Defendants have not reimbursed the City or County for any of their response costs to date, nor have they offered or agreed to abate the *contamination* or pay for future response costs." *Id.*

Fidelity's "Absolute Pollution Exclusion" excludes coverage arising from the "alleged . . . release" of "contaminant[s]" like "chemicals" and "waste."  App'x Vol. IV at 947.  Word for word, the alleged *release* of substances that *contaminated* water is unambiguously not covered by the policy.  Because the complaint's allegations fit into that exclusion, Fidelity did not owe Chisholm's coverage, a duty to defend, or a duty to investigate.  This conclusion flows straight from the policy's unambiguous terms to the CERCLA complaint's congruent allegations.[5]

---

[5] Looking at the sole directly on-point New Mexico decision that the parties provide us confirms that at least one New Mexico court would interpret the plain meaning of a pollution exclusion just like we do here.  In *Manzano Oil Corp. v. Commercial Union Insurance Co.*, a New Mexico state trial court held that liability was "unambiguously precluded from coverage by the absolute pollution exclusion." No. 93-280, slip op. at 1 (Fifth Judicial District, Chaves County, N.M. Sept. 16, 1994).  Like here, in *Manzano*, "the policy specifically precludes coverage for situations described in the absolute pollution exclusion, including the release or discharge of any pollutant, contaminant or irritant." *Id.*  The *Manzano* court found that "the injury caused to cattle from the ingestion of petroleum leakage" unambiguously was precluded because of the pollution exclusion. *Id.*  And for that reason, no duty to defend kicked in. *Id.* at 2.  Put simply, the court believed that the petroleum leakage was a released "pollutant, contaminant or irritant," and the policy excluded coverage for exactly that. *Id.* at 1–2.

There is little difference between *Manzano* and this case in terms of analysis. Allegedly, the former dry-cleaning business on Chisholm's' property released substances that contaminated the groundwater, causing harm, and Fidelity's policy excludes coverage over that exact circumstance.  We are by no means bound by this state trial court opinion, but "at the very least it provides evidence of what the state courts would do in this circumstance." *See Rippstein v. City of Provo*, 929 F.2d 576, 578 (10th Cir. 1991).

14

We disagree with Chisholm's and the district court that Fidelity's policy is ambiguous.  Chisholm's argues, and the district court found, that the term "pollutant" is ambiguous.  Relatedly, Chisholm's and the district court both suggest that the term "contaminant" (again, part of the policy's definition of "pollutant") is unclear in its breadth.  Under New Mexico's general contract interpretation principles, as manifest to the specific issues here, however, those terms are clear, so we must enforce them.

We start with the term "pollutant."  Chisholm's maintains that the definition of "pollutant" is ambiguous because it does not use the chemical name "PCE," and the CERCLA complaint does not specify the other "hazardous substances" to which it refers.  The district court took a similar tack, focusing on the allegations dealing with "unspecified" and specified "hazardous substances" and finding ambiguity in whether they are "pollutants" as defined in the policy.  App'x Vol. IV at 1052.  But in finding ambiguity on this basis, Chisholm's and the district court detected ambiguity in the exclusion using an outlier approach—one that, as we explain, is inconsistent with how the New Mexico Supreme Court has approached broad exclusions in insurance policies.

The district court held that the New Mexico Supreme Court would follow an outlier approach to interpreting absolute pollution exclusions:  the Indiana approach.[6]

---

[6] "Generally speaking, jurisdictions that have addressed the scope of the 'total pollution exclusion' fall into one of two camps[.]"  *Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 889 (10th Cir. 2014).  In the first camp are courts that take a "literal" approach—courts that find the exclusions to be "clear and unmistakable" and accordingly "apply the [] exclusions as written."  *Id.*  In the second camp are courts that take a "situational" approach—courts that often (but

*See, e.g.*, *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 850 (Ind. 2012). The parties indicate that the Indiana approach would require the policy here to specify the *exact* type of pollutant by name.  If not *exact*, the parties believe that the Indiana approach would deem an exclusion ambiguous.  And that ambiguity would be construed against an insurer, thereby prompting a duty to defend.

Neither the district court nor Chisholm's points to a single New Mexico case that indicates that insurers must list the *exact* pollutant in an exclusion, as opposed to using a term that broadly encompasses several pollutants, for the exclusion to be deemed clear.  And, in fact, New Mexico caselaw points the other way.

The New Mexico Supreme Court has held that it is "unreasonable to require [an insurer] to provide an exhaustive list of noncovered activities" under an exclusion "in order for the clause to be considered unambiguous."  *Millers Cas. Ins. Co. of Tex. v. Flores*, 876 P.2d 227, 231 (N.M. 1994).  Instead, "[i]t is sufficient that the [exclusion] includes [a term that encompasses noncovered activities] among the itemized list of [excluded things] for which coverage is excluded."  *See id.*

That logic controls here.  And so, in deeming "pollutant" ambiguous, the district court and Chisholm's chose an interpretive approach inconsistent with New Mexico law and "create[d] ambiguity where none exists."  *See United Nuclear Corp.*,

---

depending on the particular case) "find the terms of the exclusion to be ambiguous due to their broad applicability" and will "narrow the exclusions to 'traditional environmental pollution.'"  *Id.*  Indiana's approach, as the district court recognized, represents a "third camp."  App'x Vol. IV at 1010.

285 P.3d at 647.  Under New Mexico's interpretive principles, the defined term "pollutant" is unambiguous, both facially and as applied to the CERCLA complaint.

Nor is the term "contaminant" in the policy's definition of "pollutant" unclear. The policy does not define "contaminant," but a policy term is not ambiguous merely because that term is not defined in the policy.  *Battishill*, 127 P.3d at 1113.  Instead, where a term in a policy is left internally undefined, the term "must be interpreted in its usual, ordinary and popular sense."  *Watson v. W. Cas. & Sur. Co.*, 382 P.2d 723, 725 (N.M. 1963); *see Battishill*, 127 P.3d at 1113.  And the "common and ordinary meaning" of terms "may be ascertained from a dictionary."  *Battishill*, 127 P.3d at 1113.

From that, we understand the common and ordinary meaning of "contaminant" to be "something that contaminates."  *Contaminant*, Webster's Third New International Dictionary (1993).  (In turn, the common and ordinary meaning of "contaminate" is "to soil, stain, corrupt, or infect by contact or association"; to "make inferior or impure by mixture"; or "to render unfit for use by the introduction of unwholesome or undesirable elements," as in "water *contaminated* by sewage."  *Contaminate*, Webster's Third New International Dictionary (1993) (emphasis in original).)  An ordinary person would thus understand the policy's reference to a "contaminant" to mean the same thing as a substance that contaminates, as alleged in the CERCLA complaint.[7]

---

[7] Because Fidelity issued policies to Chisholm's' "predecessors" from 1994 to 2001, App'x Vol. IV at 922, we consider 1993 dictionary definitions most helpful to

Though the ordinary meaning of "contaminant" is broad, that does not render the term or the exclusion ambiguous. The New Mexico Supreme Court has held that just because a term in an exclusion may apply broadly does not mean the exclusion is ambiguous. *See Flores*, 876 P.2d at 231 (holding an "exhaustive list of noncovered activities" is not necessary for an exclusion "to be considered unambiguous"). And an insurance policy that contains both "broad coverage" and "a specific coverage exclusion does not automatically render the policy ambiguous," unless the exclusion "effectively nullifies a broad insuring clause." *N.M. Physicians Mut. Liab. Co. v. LaMure*, 860 P.2d 734, 737 (N.M. 1993). No such thing occurs here. Chisholm's can still obtain Fidelity's defense assistance for other property damage that does not deal with contaminants like those alleged in the CERCLA complaint.

Having discerned the "common and ordinary meaning" of "contaminant," "that meaning controls in determining the intent of the parties." *See United Nuclear Corp.*, 285 P.3d at 647 (quoting *Battishill*, 127 P.3d at 1114). We "must give effect to [that term] and enforce it as written." *Ponder*, 12 P.3d at 964.

The terms "pollutant" and "contaminant" are unambiguous on their face, and the terms thus unambiguously applied and precluded coverage in the CERCLA suit. The policy bars coverage for property damage by way of released *contaminants*, and the complaint alleges that hazardous substances *contaminated* groundwater. The

---

us in "ascertaining the intentions of the contracting parties with respect to the challenged terms *at the time they executed the contract*," *see Ponder*, 12 P.3d at 964 (emphasis added) (cleaned up). *See also infra* n.9.

18

CERCLA allegations fit nearly verbatim within the policy's exclusion. And, as for Chisholm's' argument that the policy's definition of "pollutant" does not list each of the named substances in the CERCLA complaint, regardless of *what* substances are alleged in the complaint, all substances released from Chisholm's' property *contaminated* groundwater and drinking water, making all substances "contaminants" and, in turn, "pollutants" under the policy.

Because, when assessed properly under current New Mexico caselaw, no ambiguity exists, the district court should have "give[n] effect to the contract and enforce[d] it as written."[8] *Ponder*, 12 P.3d at 964. It was error to narrow the pollution exclusion's clear language at Chisholm's' behest, because "absent any ambiguity, [a] court may not alter or fabricate a new agreement for the parties." *Id.* (quoting *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 746 P.2d 1109, 1111 (N.M. 1987)).

In sum, Fidelity's exclusion unambiguously precludes coverage of damage arising from alleged released contaminants, and the CERCLA complaint against Chisholm's alleged exactly that. Because the policy's clear language applies to the causes of action alleged in the complaint, Fidelity did not have to defend Chisholm's

---

[8] On top of differing modes of discerning ambiguity, the divergent approaches to interpreting absolute pollution exclusions supply different rules of how to construe ambiguous pollution exclusions in an insurance policy. *See supra* n.6. Because Fidelity's pollution exclusion unambiguously applies here, the district court should not have addressed what approach the New Mexico Supreme Court would take in interpreting an ambiguous pollution exclusion. *See Headwaters Res., Inc.*, 770 F.3d at 899 ("After finding no ambiguity in the [] policies, the district court's work was done.").

in the CERCLA lawsuit.  And Fidelity did not have a duty to investigate further for

the same reason—here, no "facts and circumstances underlying the complaint against

its insured" would help "determine whether [the insurers] ha[d] a duty to defend."

*Dove*, 399 P.3d at 404 (cleaned up).   Thus, we reverse the district court's summary

judgment ruling as it pertains to Fidelity.

**B.**

Next, we analyze whether Cincinnati's policy unambiguously denies coverage,

and with it, a duty to defend against the property damage alleged in the CERCLA

complaint.  Cincinnati's policy differs slightly from Fidelity's by having one

additional provision that we must analyze.  Even so, we hold that Cincinnati's policy

also clearly excludes coverage.

Like Fidelity's, Cincinnati's policy has an exclusion specifying that "insurance

does not apply to . . . 'property damage' arising out of the . . . alleged . . . release of

pollutants."  App'x Vol. IV at 948.  And Cincinnati's policy also defines pollutant to

mean a "contaminant."  *Id.*  For that reason, Cincinnati did not owe Chisholm's a

duty to defend either, for the reasons explained above.  *See supra* Part II.A.[9]

---

[9] Our interpretation of Fidelity's policy in part turned on the 1993 dictionary
definition of the word "contaminant," from near the time Fidelity issued its policies.
*See supra* n.7.  Cincinnati, though, issued its policies to Chisholm's' "predecessors"
from 2009 to 2017.  App'x Vol. IV at 947.  But the definition of "contaminant" has
stayed the same from 1993 through today.  *See Contaminant*, Merriam-Webster's
Online Dictionary, https://www.merriam-webster.com/dictionary/contaminant (last
accessed Apr. 16, 2025); *see also Contaminate*, Merriam-Webster's Online
Dictionary, https://www.merriam-webster.com/dictionary/contaminant (last accessed
Apr. 16, 2025).  And so there is no issue vis-à-vis the word "contaminant" with our

However, the district court stressed that Cincinnati's policy contains an alternative liability provision that provides some exceptions to its pollution exclusion.  Cincinnati's policy states that two parts of its pollution exclusion "do not apply to liability for damages because of 'property damage' that the insured would have in the absence of such a request, demand, order or statutory or regulatory requirement, or such claim or 'suit' by or on behalf of a governmental authority."  App'x Vol. IV at 1026.  In all, the district court believed that this provision creates a common law tort exception, whereby if a complaint alleges common law liability for nuisance or trespass, the pollution exclusion does not preclude coverage.  *See id.* at 1026–27.  And the district court concluded that there was a "potential" that such a common law claim might be brought, which raised a "potential for coverage" and thus triggered a duty to defend.  *Id.* at 1027.  On appeal, Cincinnati argues that this legal analysis was erroneous.[10]

At least one case has interpreted the alternative liability provision in the way the district court did—i.e., as creating a common law tort exception to the pollution

---

employing the same analysis we applied to Fidelity's exclusion to Cincinnati's later policy.

[10] Chisholm's argues that Cincinnati waived appellate review of this issue by either (1) waiving the issue before the district court or (2) forfeiting the issue in the district court and not arguing for plain error review on appeal.  Chisholm's' logic is unsound for the simple reasons that (1) the district court "invited Cincinnati Insurance to respond" to this issue below during the summary judgment hearing, and Cincinnati did so, App'x Vol. IV at 977–78, and thereafter, (2) the court "passed upon" this issue, *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).  *See also Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991–92 (10th Cir. 2019) (discussing waiver and forfeiture).

exclusion—and to the district court's mind, the case "appears to be the only published American decision directly examining the scope and meaning of this exception." *Id.* at 964. In *Clean Harbors Environment Services, Inc. v. Boston Basement Technologies, Inc.*, a property owner alleged a common law negligence claim for damages and cleanup costs against a business that caused an oil spill while installing a waterproofing system. 916 N.E.2d 406, 408 (Mass. App. Ct. 2009). The *Clean Harbors* court held that "the exception to the pollution exclusion for statutory response costs provides coverage for liability pursuant to common law for property damage caused by the oil spill." *Id.* at 410.

Under that interpretation of the exception here, it is unambiguous that the exception does not apply. In *Clean Harbors*, "[i]t [wa]s undisputed . . . that absent the requirement to respond to the oil spill imposed . . . [the business that installed the waterproofing system] still would be liable in negligence to the property owner for damage caused by the oil spill." *Id.* That much was raised in a property owner's counterclaim in response to a third-party complaint. *Id.* at 409.

Here, we have no such common law claim or request for common law damages arising from the CERCLA complaint. The liability Chisholm's faced derived solely from the assertion that Chisholm's was liable under CERCLA. Unlike *Clean Harbors*, Chisholm's was not sued for negligence. And not just negligence—*no* tort claim against Chisholm's can be found in the CERCLA complaint. Thus, Cincinnati's exception to its absolute pollution exclusion unambiguously does not apply. And so Cincinnati owed no duty to defend Chisholm's.

22

Keeping this conclusion in mind, the district court made an erroneous decision. The court understood that Las Cruces and Doña Ana in the CERCLA suit "did not bring nuisance claims against Chisholm's Village or its predecessors," but it still said it was possible that "a potential private party [could bring a] nuisance claim against Chisholm's Village." App'x Vol. IV at 1027. While relying on no New Mexico caselaw, the district court erroneously reasoned that the "potential for coverage" that appeared nowhere in the CERCLA complaint "implicates the duty to defend." *Id.*

The district court's holding conflicts directly with how New Mexico courts would approach this issue. "While an insurer has a duty to defend where it knows of unpleaded facts that bring a claim within a policy's coverage, it would seem to go without saying that an insurer can be under no obligation to defend against a theoretical 'claim' based on facts that are neither known to the insurer nor pleaded in the complaint." *Liberty Mut. Fire Ins. Co. v. Lyons*, 489 F. Supp. 3d 1242, 1253 (D.N.M. 2020) (applying New Mexico law), *aff'd*, No. 20-2152, 2021 WL 4592269 (10th Cir. Oct. 6, 2021). Indeed, as the New Mexico Supreme Court requires, "[t]he alleged facts [must] tend to show an occurrence within the coverage." *Am. Emp. Ins. Co. v. Cont'l Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973) (quoting 1 Rowland H. Long, The Law of Liability Insurance § 5.02 (1973)). Otherwise, the mere possibility of a common law claim arising would extend to almost every insurance case in some way or another, thereby always prompting a duty to defend. Here, the complaint did not contain facts alleging that Chisholm's caused a common law injury. Because of that, the exception in Cincinnati's policy does not apply.

23

In all, "the complaint filed by the claimant" did not allege "facts potentially within the coverage of the policy." *Dove*, 399 P.3d at 404 (cleaned up). The complaint was clear. *Id.* Cincinnati was not otherwise "notified of factual contentions" implicating any common law claims. *Id.* (cleaned up). And this was not a situation where a "reasonable investigation" "could have discovered facts" that would give rise to common law claims. *Id.* (cleaned up). As a result, Cincinnati was not obligated to defend. *Id.* Nor did Cincinnati have a duty to investigate further for the same reasons. As with Fidelity's, Cincinnati's exclusion does not raise ambiguity as applied to the CERCLA complaint.[11]

In conclusion, Cincinnati's policy unambiguously does not cover the property damage alleged in the CERCLA complaint against Chisholm's. As such, we also reverse the district court's summary judgment ruling as it pertains to Cincinnati.

## C.

The district court had an alternative ground for its summary judgment ruling, which it briefly addressed in the last few pages of its 119-page opinion. Proceeding as though the New Mexico Supreme Court might "not follow Indiana's approach" to discerning whether Fidelity and Cincinnati's absolute pollution exclusions were ambiguous, the district court gave controlling weight to the fact that courts outside of New Mexico differ in how they identify and construe ambiguous absolute pollution

---

[11] And for the same reasons, analyzing the applicability of Cincinnati's exclusion does not require us to answer what approach the New Mexico Supreme Court would take in construing an ambiguous pollution exclusion. *See supra* n.8.

exclusions. App'x Vol. IV at 1054. And without any basis in New Mexico caselaw, the court held that the split in suggestive authority created "sufficient legal ambiguity" on "which approach New Mexico would follow." *Id.* That legal ambiguity in itself, the court held, rendered Fidelity and Cincinnati's pollution exclusions sufficiently ambiguous and, construing the ambiguity in Chisholm's' favor, warranted imposing a duty to defend Chisholm's on Fidelity and Cincinnati.[12] Cincinnati and Fidelity appeal from this alternative holding as well.[13]

---

[12] In reaching its alternative holding, the district court mixed two distinct lines of cases. The first line of cases stands for the proposition that uncertainty over how to read the caselaw governing the insurance policy (i.e., do the cases impose coverage in a given situation, or not?) can give rise to a duty to defend. *See, e.g.*, *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822, 830 (D.N.M. 1994) (applying New Mexico law). The second line of cases stands for the proposition that disagreements among courts over the ambiguity or meaning of language in an insurance policy is evidence that the language is ambiguous. *See, e.g.*, *United Nuclear Corp.*, 285 P.3d at 651–53. Ambiguous language triggers a rule of construction to interpret that ambiguity in the insured's favor, and, given this case's particulars, the applicability of that rule here would trigger a duty to defend. *See also Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (distinguishing these categories of uncertainty that can give rise to a duty to defend).

Though the district court cited cases from both lines, we read the district court's alternative holding as falling into the latter line—that the legal uncertainty evidenced that the exclusions are linguistically ambiguous, ambiguity which then must be construed against the insurers. We reach this conclusion not only because the only binding case the district court cited was a case in the second line of cases, App'x Vol. IV at 155–56 (citing *United Nuclear Corp.*, 285 P.3d at 651, 656), but also because the legal uncertainty the district court identified was among "divergent legal approaches" to detecting ambiguity in the absolute pollution exclusions, *id.* at 1058. In other words, the "legal ambiguity" stems from other courts' disagreement over whether the absolute policy exclusion's language is ambiguous and/or what the language means.

[13] We afford a generous reading to Fidelity and Cincinnati's opening briefs. The briefs attack the district court's alternative ground by arguing that their policies

The district court's alternative holding directly clashes with New Mexico Supreme Court caselaw. In *United Nuclear Corp. v. Allstate Insurance Co.*, 285 P.3d 644, the New Mexico Supreme Court held that a split among jurisdictions on whether policy language is ambiguous, or on what policy language means, cannot, by itself, establish that such language is ambiguous. In *United Nuclear*, the New Mexico Supreme Court examined whether an undefined term (the word "sudden") in a pollution exclusion clause was ambiguous, and the court chose to "consider extrinsic evidence to help [in its] evaluat[ion.]" 285 P.3d at 648–53. The court began with "other relevant terms" in the policies at issue. *Id.* at 649. Then, the court turned to the undefined "term's usual, ordinary, and popular meaning, such as found in a dictionary," *id.* at 650 (cleaned up), and surveyed the multiple, competing definitions of the term at issue, *id.* at 650–51; *see id.* at 656 (referring again to the "diverging definitions in standard dictionaries"). The court also looked to the "custom and usage" of the language in the insurance industry. *Id.* at 653. And—most relevant to us here—the court surveyed a "split among other courts that have considered the issue in similar insurance coverage disputes." *Id.* at 651. The court ultimately found that the term, in the context presented there, was ambiguous. *Id.* at 656.

Critically, the New Mexico Supreme Court conspicuously caveated its reliance on "a split in legal authority" in discerning whether a policy term is ambiguous. *Id.* at 651. The court held that although "a split in legal authority may be indicative of

---

unambiguously deny coverage—a conclusion that a split in authority "may be indicative" against. *United Nuclear Corp.*, 285 P.3d at 651.

an ambiguity in the policy, *it does not establish one*." *Id.* (emphasis added) (cleaned up).

Contrary to the command of the New Mexico Supreme Court, the district court held the opposite in its alternative ground for summary judgment. The district court held that "divergent legal approaches" to interpreting this exclusion language alone establishes "sufficient" ambiguity so as, given the supposed ambiguity's nature, "to trigger the duty to defend." App'x Vol. IV at 1058. That was the only piece of evidence upon which the district court relied in reaching its alternative conclusion. *Id.* at 1054–58. And Chisholm's defends this holding, maintaining on appeal that the uncertainty the district court identified[14] "in and of itself, gives 'rise to an insurer's duty to defend.'" Aple. Br. at 23. Both the district court and Chisholm's are wrong: the New Mexico Supreme Court has held, in no uncertain terms, that the uncertainty the district court identified "does not establish" an ambiguity. *United Nuclear Corp.*, 285 P.3d at 651. Given that a federal court's task in a diversity case is "simply to ascertain and apply the state law," *Wade*, 483 F.3d at 665 (cleaned up), it was error for the district court to disregard the clear command of the New Mexico Supreme Court in this respect.

---

[14] Chisholm's at times conflates the two legal uncertainty theories we discussed *supra* note 12. But for the most part, Chisholm's correctly pinpoints the legal uncertainty upon which the district court relied as the disagreements among jurisdictions over what ambiguity-discerning "approach [to apply] to the absolute pollution exclusion"—functionally, the cross-jurisdictional disagreement over whether "the definition of 'pollutants' in the [instant] Policies [is] ambiguous." Aple. Br. 22–23.

As we have explained, the contamination damage alleged in the CERCLA complaint plainly falls within the scope of the policies' exclusions and thus falls outside of the policies' coverage. The split in non-New Mexico authority on how to identify (and then construe) ambiguous pollution exclusions cannot, under New Mexico law, override our New Mexico law-based conclusion that the pollution exclusions we have here are unambiguous.

The district court's alternative ground was contrary to New Mexico law, and we agree with Fidelity and Cincinnati that their policies remain unambiguous. We thus reverse the district court's alternative summary judgment ruling as well.

### III.

For these reasons, we REVERSE the district court's grant of Chisholm's' motion for summary judgment and denials of Fidelity and Cincinnati's motions for summary judgment.[15]

Entered for the Court

Allison H. Eid
Circuit Judge

---

[15] We also DENY Chisholm's' motion to certify three questions to the New Mexico Supreme Court. Certification is proper where a question "(1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). We find certification of Chisholm's' proposed questions unnecessary, because settled New Mexico caselaw provides us more than sufficient guidance to decide this case. *See id.* ("When we see a reasonably clear and principled course, we will seek to follow it ourselves.").